OPINION
{¶ 1} Defendant-appellant, Ricky J. Bates, appeals from a decision of the Belmont County Court, Eastern Division convicting him of assault and ordering him to pay restitution to the victim.
 {¶ 2} On September 26, 2002, appellant was enjoying a night of drinking with Alice Worley, Allen Craig, Charlene Griffin, and Crissy Leek. The group was in front of Griffin's house on Rosser Avenue in Bellaire. At some point in the night, Ricky Givens also joined the group. According to Worley and Craig, Worley went to get some beer out of the car when appellant grabbed her buttocks. Worley told appellant to quit and they exchanged words. Appellant then shoved her, causing her to fall and hit the back of her head against the sidewalk. However, according to Leek and Givens, appellant and Worley were both headed for the car at the same time and they ran into each other. They testified that Worley and appellant both fell to the ground.
 {¶ 3} Worley went to Bellaire Hospital that night where she was given Codeine and an ice pack for her head. She testified that the next day she went to Ohio Valley Hospital because her head hurt very badly. From there, Worley was life-flighted to Allegheny Hospital. Worley testified that at Allegheny, she was treated for a blood clot in her head.
 {¶ 4} Worley filed charges against appellant for assault, a first degree misdemeanor in violation of R.C. 2903.13(B). He proceeded to a bench trial. The court found him guilty as charged. On August 21, 2003, the trial court sentenced appellant to 120 days in jail, 90 days suspended; two years unsupervised probation; a $300 fine and costs; and ordered him to make restitution of $5,327.92 for Worley's medical bills.
 {¶ 5} Appellant filed his timely notice of appeal on August 28, 2003. On appellant's motion, the trial court stayed his sentence pending this appeal.
 {¶ 6} Appellant raises two assignments of error, the first of which states:
 {¶ 7} "THE COURT ERRED IN FINDING THE DEFENDANT GUILTY OF ASSAULT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 8} Appellant argues his conviction is against the weight of the evidence. He points out that, according to Officer William Shallcross, Worley was intoxicated at the time she was injured. Thus, appellant asserts, Worley's testimony may not have been accurate. He also alleges that Worley persuaded Craig to give testimony against him. Additionally, appellant notes that Worley had a pre-existing condition that caused her to have a plate and screws in her head and to take an anti-seizure medication. Next, appellant points out that Leek and Givens testified that he and Worley merely bumped into each other accidentally. Finally, appellant contends that plaintiff-appellee, the State of Ohio, did not prove that he was the one who caused serious physical harm to Worley because she went to the hospital three times, thus leaving time in between to cause her injuries.
 {¶ 9} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 10} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 11} Appellant was convicted of violating R.C. 2903.13(B), which provides: "No person shall recklessly cause serious physical harm to another or to another's unborn."
 {¶ 12} The evidence at trial revealed the following.
 {¶ 13} Officer Shallcross testified first. He responded to a call of a disturbance or fight on Rosser Avenue on the night in question. (March 20 Tr. 6). Officer Shallcross testified that when he arrived, he found Worley, Griffin, and Craig outside. (March 20 Tr. 6). Appellant was not there. (March 20 Tr. 6). Officer Shallcross stated that Worley had a large bump or contusion on the back of her head, which may have been bleeding. (March 20 Tr. 7). He stated that Worley was in pain. (March 20 Tr. 9). He asked Worley if she wanted medical attention and she told him she was going to Bellaire Hospital. (March 20 Tr. 8). Officer Shallcross also testified that Worley told him she and appellant had argued and that appellant shoved her, causing her to fall backwards and hit her head on the sidewalk. (March 20 Tr. 10). Officer Shallcross further noted that all of the people there had been drinking and were intoxicated, including Worley. (March 20 Tr. 7, 10-11).
 {¶ 14} Craig testified next. He testified that the group was drinking beer on the night in question. (March 20 Tr. 15-16). Craig stated that Worley reached into a car to retrieve some beer when appellant reached over and grabbed her by the rear end. (March 20 Tr. 17). He testified that Worley told appellant to leave her alone. (March 20 Tr. 17). He further testified that appellant called Worley a name and pushed her "real hard," which knocked her down. (March 20 Tr. 17-18). Craig testified that Worley's head hit the sidewalk and she was knocked out. (March 20 Tr. 18). He testified the police showed up soon after and that appellant was still there. (March 20 Tr. 19).
 {¶ 15} Worley was appellee's last witness. She too testified that she, appellant, Leek, Craig, and Griffin were drinking together on the night in question. (March 20 Tr. 26-27). But she claimed she was not intoxicated. (March 20 Tr. 27). Worley testified that as she was getting beer out of the car, appellant grabbed her behind. (March 20 Tr. 28). She stated that she told him to quit and "[h]e wasn't going to go for that so we had a few words." (March 20 Tr. 29). Worley then testified that appellant shoved her backwards with two hands and she fell. (March 20 Tr. 29-30). She stated that she hit the back of her head on the sidewalk and laid there but she did not know whether she was knocked out or not. (March 20 Tr. 30). She could not remember how long she was on the ground. (March 20 Tr. 30). Worley testified that she was in pain, but not bleeding. (March 20 Tr. 30). Next, she testified that the police arrived and she informed Officer Shallcross of what happened. (March 20 Tr. 31).
 {¶ 16} In his defense, appellant first called Givens to testify. Givens had been friends with appellant for 14 years. (July 17 Tr. 16). Givens testified that he was not with the group during most of the night, but that he just arrived at Griffin's house when Worley and appellant both came running out to the car. (July 17 Tr. 9-10). He stated that the two ran into each other and both fell down. (July 17 Tr. 10). Givens testified that Worley was on the ground for a few seconds and that when she got up she was holding her head. (July 17 Tr. 11). Next, Givens stated that he heard someone yell that they were calling the cops and he left. (July 17 Tr. 11).
 {¶ 17} Next, Charles Jones testified. Jones was also appellant's long-time friend. (July 17 Tr. 25). He was not present when Worley was injured. (July 17 Tr. 20). Jones testified that he was present at Melody Shreves' house on an occasion when Worley, Leek, and Craig were also present. (July 17 Tr. 20-21). He stated that on this occasion, everyone was drinking and Worley and Craig were intoxicated. (July 17 Tr. 24-25). Jones testified that Worley sat on Craig's lap and said: "Do you know of anybody who'd go to Court, and she said, You'll go to Court won't you Allen. I know you will." (July 17 Tr. 21). Some of Jones' other testimony regarding this incident was inaudible, but the gist of it appears to be that Jones heard Worley promise Craig some sort of favors in exchange for his testimony. (July 17 Tr. 21-23).
 {¶ 18} Finally, Leek testified. Leek testified that she was with Worley and appellant the night Worley was injured. (July 17 Tr. 27). She, like the others, testified that everybody had been drinking. (July 17 Tr. 28). Leek corroborated Givens' testimony that Worley and appellant ran up to the car and "hit into each other." (July 17 Tr. 28). She stated that Worley and appellant both fell to the ground and that Worley started rolling around on the ground saying that appellant hit her. (July 17 Tr. 28).
 {¶ 19} Leek also testified about the incident at Melody Shreves' house. She stated that she was at Shreves' house along with Shreves, Worley, Jones, Craig, and others. (July 17 Tr. 31). Again, everyone was drinking. (July 17 Tr. 31). Leek testified that she heard Worley state: "Well, I'll pay anybody $50.00 if they'll go and testify on my behalf against Rick Bates." (July 17 Tr. 31). Additionally, Leek testified that she did not get long with Worley. (July 17 Tr. 36, 39).
 {¶ 20} In rebuttal, Worley testified that she never offered anyone money or favors to lie on her behalf. (July 17 Tr. 45).
 {¶ 21} While there is evidence that tends to show that appellant accidentally ran into Worley, there is also evidence that appellant shoved her causing her to fall and hit her head. This evidence supports the trial court's finding of guilt. In rendering its guilty verdict, the court stated it found that the State's witnesses were more credible. (July 17 Tr. 51). It noted that appellant's witnesses were closely tied to him. (July 17 Tr. 51). "It is universally accepted that the jury, or the trial court where there is no jury, is the sole judge of the credibility of witnesses and of what weight is to be given their testimony." In re Lieberman (1955), 163 Ohio St. 35, 38. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., Inc.v. Cleveland (1984), 10 Ohio St.3d 77, 80. In this case, the trial court was able to study the witnesses' body language, eye contact, voice inflections, and demeanor. We will not second-guess the trial court's evaluation of these mannerisms.
 {¶ 22} Additionally, appellant contends that appellee did not prove he caused Worley serious physical harm because she went to the hospital three different times, thus leaving time in between to cause her injuries.
 {¶ 23} The night Worley was injured she suffered a lump on the back of her head and was treated at Bellaire Hospital with Codeine and an ice pack. (March 20 Tr. 31-32). Officer Shallcross testified that Worley had a large bump or contusion on the back of her head that may have been bleeding. (March 20 Tr. 7). When she hit her head, Worley may have been unconscious. (March 20 Tr. 18, 30). She was in pain. (March 20 Tr. 30). She sought treatment the next day for the same injury because her head hurt so badly. (March 20 Tr. 32). Worley was brought by the E-squad to Ohio Valley Hospital. (March 20 Tr. 33). Ohio Valley Hospital had Worley life-flighted to Allegheny Hospital on September 28, 2002, where she was treated for a blood clot in her head. (March 20 Tr. 33). This evidence was sufficient to show that she suffered serious physical harm as a result of being shoved to the sidewalk.
 {¶ 24} Since competent, credible evidence exists on the record that appellant recklessly caused serious physical harm to Worley, the verdict was not against the manifest weight of the evidence. Accordingly, appellant's first assignment of error is without merit.
 {¶ 25} Appellant's second assignment of error states:
 {¶ 26} "THE COURT ERRED IN ORDERING DEFENDANT TO PAY RESTITUTION OF MEDICAL BILLS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 27} Appellant argues that the trial court failed to give consideration to the fact that Worley had a plate and screws in her head and was taking Dilantin for seizures, which she mixed with a heavy dose of alcohol that night. He also alleges that the evidence showed that Worley went to the hospital three days in a row before receiving her diagnosis during which time she could have injured herself some other way. Next, appellant argues that he had no chance to cross-examine on the issue of restitution because appellee did not present any medical testimony. Appellant also claims that the trial court has no authority to order restitution for medical bills. Citing, State v. Pittman (1990),61 Ohio App.3d 425. Finally, appellant asserts the veracity of Worley's testimony on the subject is called into question because she submitted a bill for a mammography screening that pre-dated the incident.
 {¶ 28} Appellant was convicted of a first-degree misdemeanor. See R.C. 2903.13(C). Penalties for first degree misdemeanors are prescribed in R.C. 2929.21(B)(1) and (C)(1) as a maximum of six months' incarceration and a fine of up to $1,000. R.C. 2929.21(E) provides that a person found guilty of a misdemeanor may be required to make "restitution for all or part of the property damage that is caused by the offense and for all or part of the value of the property that is the subject of any theft offense * * * that the person committed." Several courts have held that R.C. 2929.21(E) prohibits restitution for items such as medical bills. See State v. Theuring (1988), 46 Ohio App.3d 152;Eastlake v. Kosec (1985), 29 Ohio App.3d 259. However, restitution for medical expenses may be ordered as part of the terms of probation. State v. Bruce (1994), 95 Ohio App.3d 169;State v. Bush (1992), 83 Ohio App.3d 717; State v. Pittman,61 Ohio App.3d 425.
 {¶ 29} Appellant cites Pittman, 61 Ohio App.3d 425, in support of his position. In Pittman, the defendant was convicted of felonious assault and sentenced to a five to 15 year prison term. Additionally, the court ordered him to pay $7,500 to the victim in restitution. The Fifth District noted that the trial court may order restitution for medical expenses as part of the terms of probation. Id. at 427. But it found no authority for the State's contention that because the court could order a $7,500 fine, that amount could be diverted as payment of restitution for the victim's medical bills. Id. Therefore, the court reversed and remanded the judgment.
 {¶ 30} The circumstances are different in the present case. Here it appears the court intended the restitution to be a condition of probation and appellant's suspended sentence. The court's judgment entry states, in pertinent part:
 {¶ 31} "Defendant sentenced to 120 days in jail with 90 days suspended on the following conditions:
 {¶ 32} "(1) Pay fine of $300.00, $75.00 Public Defender fee, plus costs of $70.00;
 {¶ 33} "(2) Unsupervised probation for two years;
 {¶ 34} "(3) Not violate any laws of the State of Ohio or any Municipality during probation;
 {¶ 35} "(4) Make restitution of $5327.92 for medical bills. Restitution to be paid to Alice Worley."
 {¶ 36} Thus, the trial court intended the restitution to be a condition of appellant's suspended sentence and probation. While a trial court cannot order the restitution of medical expenses as part of a defendant's sentence, it can order the restitution of medical expenses as a condition of his/her probation under R.C.2951.02 if it is reasonably related to the offense for which the offender has been placed on probation. Maple Heights v. Lazar
(Apr. 1, 1999), 8th Dist. No. 74144. R.C. 2951.02(C)(1) provides that when an offender who has been convicted of a misdemeanor is placed on probation or his or her sentence is suspended pursuant to R.C. 2929.51(A), the court may, in the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior, impose requirements on the offender as a condition of the offender's probation or other suspension.
 {¶ 37} This court considered a similar issue in State v.Badurik (Dec. 17, 1999), 7th Dist. No. 98 CA 106. In Badurik, the trial court ordered the defendant, convicted of assault, to make restitution to the victim for his medical expenses. The defendant appealed arguing the court lacked the authority to make such an order. We construed the trial court's entry as ordering restitution of the victim's medical bills as a condition of his probation. Although we stated that the trial court's entry could have been clearer, a reading of the entry in its entirety led us to conclude the restitution was a condition of probation. The circumstances in the present case are very similar to those inBadurik. Hence, in this case, as in Badurik, we conclude that restitution was proper because the court intended the restitution to be a condition of appellant's suspended sentence and probation.
 {¶ 38} Next, we must address appellant's contention that the evidence did not support an order of restitution. The amount of the restitution must be supported by competent, credible evidence from which the court can discern the amount to a reasonable degree of certainty. State v. Kreischer, 5th Dist. No. 01-CA-04, 2002-Ohio-357; State v. Gears (1999),135 Ohio App.3d 297.
 {¶ 39} At sentencing, appellee submitted medical bills to the court. However, those bills are not included in the record on appeal. Both counsel and the court reference these bills. Worley did not have medical insurance. (Sentencing Tr. 5). Her medical bills totaled $5,327.92. (Sentencing Tr. 4). For some reason, a bill for a mammogram was included with the other bills, which would have brought the total up to $5,454.92. (Sentencing Tr. 4). The court stated that it would not consider that bill. (Sentencing Tr. 7). Regarding the restitution order the court stated:
 {¶ 40} "* * * and the defendant is ordered to pay restitution to the victim, Alice Worley, for medical bills that the Court feels probably were involved with this incident because they're all within a few days of the — the injury. Some of them I guess were in November — September, October and November. $5,327.92 restitution." (Sentencing Tr. 8).
 {¶ 41} Appellant argues that the court erred in ordering him to pay the medical bills, not because the amount was not discernable to a reasonable degree of certainty, but because the evidence did not demonstrate that he caused Worley's injuries. At trial, Worley testified that she went to Bellaire Hospital the night she was injured, where she was treated and released. (March 20 Tr. 31-32). She then testified that the next day her head hurt so badly that she went to Ohio Valley Hospital. (March 20 Tr. 32-33). Worley testified that she was then life-flighted to Allegheny Hospital the following day. (March 20 Tr. 33). At Allegheny Hospital, she was treated for swelling and a blood clot in her head. (March 20 Tr. 34). She stated that she incurred medical expenses as a result of her injury. (March 20 Tr. 34). Additionally, Worley testified that she suffered a head injury approximately eight years prior, which required her to have a plate and screws put in her head and to take an anti-seizure medicine. (March 20 Tr. 35, 37).
 {¶ 42} Based on Worley's testimony, the court's decision was based on competent, credible evidence. Appellant cannot point to any evidence that would support his theory that Worley may have injured herself sometime in the days after September 26, 2002. Hence, appellant's second assignment of error is without merit.
 {¶ 43} For the reasons stated above, the trial court's decision is hereby affirmed.
Judgment affirmed.
Waite, P.J., and DeGenaro, J., concur.