OPINION
{¶ 1} The instant appeal emanates from a final judgment of the Stark County Court of Common Pleas, Juvenile Division. Appellant, Britaini K., is seeking the reversal of the trial court's determination that she is a juvenile delinquent. As the sole basis for the appeal, she maintains that the factual finding underlying this determination, i.e., she had committed the offense of assault, was against the manifest weight of the evidence.
 {¶ 2} The juvenile charges against appellant were based upon a physical confrontation involving herself and a second juvenile, Theresa P. ("Theresa"). This confrontation took place while both girls were attending Jackson Memorial Middle School in Stark County, Ohio. As a result of the school's investigation into the altercation, appellant was given a full three-day suspension from school, while Theresa was only required to serve a one-day in-school suspension. The incident was also investigated by Officer David Zink ("Officer Zink") of the Jackson Township Police Department. Upon reviewing the school videotape and questioning both appellant and Theresa concerning the incident, Officer Zink executed a juvenile complaint against appellant, charging her with the offense of disorderly conduct under R.C.2917.11. This initial charge stated that appellant had caused inconvenience, annoyance or alarm to Theresa.
 {¶ 3} After appellant had entered a plea stating that the allegations in the first complaint were not true, Officer Zink executed a second complaint which charged her with assault under R.C. 2903.13. The new complaint asserted that appellant had knowingly caused, or tried to cause, harm to the victim. As to this charge, appellant again entered a plea that the allegations against her were untrue.
 {¶ 4} As of the date of this confrontation, appellant was thirteen years old and was an eighth grader at the middle school, as was Theresa. At some previous point in time, the two girls had been friends and had taken certain classes together.
 {¶ 5} In late April 2005, an acquaintance of appellant informed her that Theresa had been making derogatory comments about her. Specifically, the acquaintance said that Theresa had made a racial slur regarding the general manner in which appellant tended to act; i.e., Theresa was quoted as saying that appellant tried to "act black." On the next school day, appellant requested a mutual friend to speak to Theresa about whether she had actually made the racial slur. The mutual friend eventually told appellant that Theresa had not denied making the comments.
 {¶ 6} The following school day, appellant stopped Theresa in a hallway after their third-period class. At that moment, appellant attempted to ask why Theresa was no longer friendly with her. In response, Theresa made a statement which was similar to the prior comment she had made. Even though the girls then made a number of other remarks to each other, the conversation abruptly ended when Theresa simply walked away.
 {¶ 7} Later that afternoon, Theresa was standing by her school locker after leaving her seventh-period science class. Once again, appellant approached her for the purpose of discussing Theresa's racial statements. During the course of their ensuing argument, Theresa touched appellant on her upper torso. This action led to a physical altercation in which the girls fell on the floor of the hallway and struggled for approximately thirty seconds. The entire altercation was recorded by a video camera that was mounted on the wall near the end of the hallway.
 {¶ 8} The struggle eventually ended when the girls were separated by a teacher, who then escorted them to the principal's office. At that time, appellant gave a verbal and written statement about the incident to the principal. As part of her statement, appellant averred that when Theresa tried to "brush" her aside, she pushed Theresa to the floor, jumped on Theresa, "slammed" Theresa's head into the floor, and punched Theresa a number of times. Although Theresa also gave a short verbal statement to the principal, she was immediately taken to a hospital for treatment on her back and head.
 {¶ 9} As was noted above, two complaints were filed against appellant in light of the foregoing basic incident. A one-day bench trial was then held on the entire case in September 2005. As its primary witness, the state presented the testimony of Theresa. At the outset of her testimony, she indicated that, prior to the beginning of the altercation, she had been standing next to the lockers talking to other students. She further indicated that when appellant approached her, appellant backed her up into a corner between the end of the lockers and the wall. According to Theresa, since appellant was trying to intimidate her and there was no way for her to leave the area, she attempted to push appellant aside and walk away. However, appellant then pushed her into the lockers and the struggle ensued. Finally, Theresa testified that, as a result of two blows to her head, she had suffered a mild concussion.
 {¶ 10} In addition to Theresa, the state also presented the testimony of Officer Zink, the middle school principal, and the middle school vice principal. As part of his statements to the trial court, the principal testified that when he spoke to appellant immediately after the altercation, she was "pretty" calm in stating her version of the events. According to the principal, appellant stated that she felt she had the right to use physical force when Theresa refused to speak to her about the derogatory comments. The testimony of the vice principal was primarily used to introduce into evidence the school videotape of the altercation.
 {¶ 11} In response to the state's case against her, appellant testified in her own behalf. First, appellant indicated that, prior to the seventh-period science class, Theresa had walked by her during their lunch break and made a statement which essentially challenged her to a fight. Second, appellant stated that when she approached appellant by the lockers, she did not back Theresa up into a corner; instead, there had been adequate space for Theresa to walk away if she had so desired. Third, appellant testified that Theresa had started the fight by pushing her with both hands. Fourth, she stated that she grabbed at Theresa merely as a means of stopping Theresa from hitting her.
 {¶ 12} Appellant also submitted at trial the testimony of four students who had been at the middle school on the day of the confrontation. Three of these witnesses specifically stated that they saw Theresa initiate the fight by pushing appellant. Three of them also stated that they had heard Theresa make the same racial slur to appellant at some point prior to the beginning of the fight. In addition, two of the students testified that they had heard Theresa challenging appellant to the fight.
 {¶ 13} In light of the foregoing evidence, the trial court expressly found that appellant had committed the offense of assault. Based upon this, the court further found her to be a juvenile delinquent. The complaint for disorderly conduct was then dismissed. As to her penalty, the trial court placed appellant on probation, ordered her to perform twenty hours of community service, and ordered her to attend anger management classes.
 {¶ 14} In now appealing the trial court's "delinquency" decision, appellant has assigned the following as error:
 {¶ 15} "The trial court's decision adjudicating [appellant] a delinquent child is against the manifest weight of the evidence because the prosecution failed to prove assault beyond a reasonable doubt."
 {¶ 16} In asserting that the evidence before the trial court did not support the finding that she committed an assault, appellant contends that a reasonable person could not have concluded that she had the requisite mens rea for that offense. Specifically, appellant argues that the trial court should not have found that she "knowingly" caused harm to Theresa because the evidence established that Theresa was the aggressor in starting the physical altercation.
 {¶ 17} In support of her argument, appellant relies heavily upon her own testimony and that of the four student-witnesses she presented at trial. Appellant emphasizes that she and three of the students expressly testified that, even though Theresa had the ability to avoid the confrontation, Theresa pushed appellant with both hands. Furthermore, she submits that Theresa's own testimony indicated that Theresa had instituted the fracas. As to this point, appellant notes that Theresa once stated during her testimony that she had "got into a fight" with her. Lastly, appellant asserts that Theresa's basic testimony was so inconsistent that it was not believable.
 {¶ 18} At the outset of our analysis, this court would note that appellant has mislabeled the nature of her argument. By asserting that Theresa was the aggressor at the start of the altercation, appellant is actually contending that she acted in self-defense when she either pushed or pulled Theresa to the floor of the hallway. However, when the defense of self-defense is properly raised, it does not act to negate the mens rea element of the charged offense; rather, it acts as a full justification for the accused's actions. State v. Johnson (Dec. 14, 2000), 8th Dist. No. 76600, 2000 Ohio App. LEXIS 5897.
 {¶ 19} Notwithstanding appellant's misstatement as to the basic nature of her argument, the important point is that the record before us further establishes that she has mischaracterized the nature of Theresa's testimony. It is true that, in responding to a general question at the outset of her testimony concerning what had happened on May 2, 2005, Theresa stated that she had basically been involved in a fight. Nevertheless, in providing her detailed description of the confrontation, Theresa expressly testified that when appellant initially approached her by the lockers, appellant forced her into a corner between the lockers and the wall. In addition, Theresa stated that the only way she could attempt to leave the area at that point was to brush appellant aside. Under this version of the altercation, Theresa clearly would not have been the aggressor.
 {¶ 20} Although appellant states under her sole assignment that she is primarily contesting the manifest weight of the evidence, this court would note that her challenge to the basic substance of Theresa's testimony actually raises a "sufficiency" question. In deciding whether the state presented sufficient evidence to support a juvenile finding of true, an appellate court must determine whether the state of the evidence was such that any rational trier of fact could have found that the state was able to prove each element of the charged defense beyond a reasonable doubt. See In re Heintzelman, 5th Dist. No. 2005 CA 00250, 2006-Ohio-2844, at ¶ 9. In light of the foregoing discussion, we conclude that Theresa's testimony was not only sufficient to show that appellant was the aggressor during the confrontation, but also established each element of assault.
 {¶ 21} In regard to the "aggressor" issue, appellant submits that the school videotape of the incident supports her contention that Theresa did not need to touch her in order to walk away from her. As to this point, this court would emphasize that our review of the videotape shows that many aspects of the altercation are not clear on the tape because other students are standing between the camera and the location of the fight. However, one aspect which is fairly clear on the tape is the beginning of the altercation. That is, the videotape readily indicates that, by walking towards Theresa, appellant forced her into a corner created by the wall and the back edge of the lockers. In addition, one of appellant's own student-witnesses stated that appellant had cornered Theresa by the lockers. To this extent, the record contained other evidence supporting the finding that appellant had been the aggressor in this matter.
 {¶ 22} As to appellant's "credibility" argument, the trial transcript does demonstrate that Theresa did exhibit some confusion concerning how many times appellant had spoken to her on the day of the incident. But the transcript also indicates that the extent of her confusion was limited, and that she gave a very coherent statement as to what exactly took place during the altercation itself. Considered as a whole, Theresa's testimony was certainly not so confusing as to render it completely lacking in credibility. We would also again note that many aspects of Theresa's testimony were corroborated by other evidence presented at trial.
 {¶ 23} Lastly, throughout her entire "manifest weight" argument, appellant places heavy emphasis upon the nature of Theresa's derogatory comments and their effect upon her. While this court would certainly understand why appellant would find the racial slur to be quite upsetting, we would agree with the trial court that there is no legal authority for the proposition that a verbal statement can be a legal justification for a physical assault. In other words, the fact that Theresa made the racial comment in this instance does not make her the aggressor who instigated the fight. Furthermore, since this particular racial comment would not provoke an average person to commit an act of violence in response, the comment would not constitute "fighting words" which would justify appellant's actions in this instance. See, generally, State v. Barnes, 1st Dist. No. C-050174, 2006-Ohio-1748; State v. Drugmond (Sept. 24, 1979), 11th Dist. No. 2638, 1979 Ohio App. LEXIS 12235.
 {¶ 24} As a general proposition, a juvenile can be found to be a delinquent only when the evidence proves beyond a reasonable doubt that she has performed an act which would be deemed criminal if it had been committed by an adult. See R.C.2151.35(A); Juv.R. 29(E). Accordingly, in determining whether a finding of delinquency is against the manifest weight of the evidence, an appellate court must apply the same test which is employed in reviewing criminal convictions. In re Fortney, 162 Ohio App.3d 170, 2005-Ohio-3618. In turn, the basic test for determining "manifest weight" issues on appeal has been summarized in the following manner:
 {¶ 25} "In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, * * *. `Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."' Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390." State v. Bates,
7th Dist. No. 03-BE-57, 2004-Ohio-1370, at ¶ 9. (Parallel citations omitted.)
 {¶ 26} In delineating the foregoing test, the Bates court further indicated that questions as to the credibility of a witness is primarily for the trier of fact. Id., at ¶ 10. This holding is based upon the fact that the trier of fact is considered to be in the best position for determining whether the testimony of a particular witness is believable. Fortney,2005-Ohio-3618, at ¶ 45.
 {¶ 27} In the instant case, our review of the trial transcript readily shows that appellant and Theresa gave conflicting testimony as to who had taken the initial physical step in starting their altercation. In light of the foregoing discussion, it cannot be said that the trial court abused its discretion in finding that Theresa's version of the events was most credible. In turn, since Theresa expressly testified that appellant had backed her into a corner and she could not leave without brushing her aside, this court ultimately holds that the trial court did not "lose its way" in finding that appellant had been the aggressor at the outset of the altercation.
 {¶ 28} As a separate argument under her sole assignment, appellant contends that the trial court's bias against her can be seen from the fact that, even though the state did not object, the court did not allow her trial counsel to question Officer Zink about the school videotape.[1] In support of this point, appellant states that the trial judge "yelled" at counsel in regard to this matter. However, the transcript before us readily shows that the judge momentarily raised his voice because counsel did not show proper deference to one of the judge's evidential rulings. More importantly, our review indicates that the trial judge ultimately allowed counsel to assert his questions regarding the tape. Thus, the record in this case does not support appellant's assertion that the final decision of the trial court was predicated upon any type of bias toward her.
 {¶ 29} Finally, appellant maintains that the "delinquency" determination should now be reversed because the "aura" of a conflict of interest "permeated" the case. In relation to this point, appellant refers to the fact that Theresa's mother had previously performed work for the Stark County Court of Common Pleas, and that she had specifically asked Officer Zink to investigate the altercation between the two girls.
 {¶ 30} In raising the foregoing issue, appellant has failed to indicate how this issue is relevant to her "manifest weight" argument. Nevertheless, we would simply note that there is nothing in the record before us which would support a finding of prosecutorial misconduct in pursuing this case. First, we would again emphasize that there was considerable evidence supporting the finding that appellant had committed the offense of assault. Second, we would note that the nature of the underlying altercation clearly supported the filing of a complaint against appellant. As to this latter point, the evidence showed that this was not a situation in which two juveniles merely slapped at each other; instead, the evidence showed that appellant punched Theresa's head into the floor twice. Finally, in regard to the fact that Theresa's mother was a county employee who had completed certain work for the trial court, it is sufficient to note that the case was tried by a visiting judge; thus, the record again does not support the assertion of possible bias.
 {¶ 31} Pursuant to R.C. 2903.13(A), a person commits the offense of assault when she knowingly causes physical harm to another individual. Upon reviewing the testimony of Theresa P., this court holds that her trial statements were legally sufficient to establish that appellant had been the aggressor in the underlying confrontation. Furthermore, upon reviewing the entire record in this appeal, we conclude that the finding of an assault was not against the manifest weight of the evidence because the state presented substantial evidence that appellant knowingly caused physical harm to the victim. Thus, since the trial court's ultimate judgment of delinquency was supported by the evidence, the sole assignment in this appeal lacks merit.
 {¶ 32} The judgment of the trial court is affirmed.
O'NEILL, J., RICE, J., Eleventh Appellate District, sitting by assignment, concur.
[1] As the initial reason for its ruling on this matter, the trial court stated that Officer Zink could not be cross-examined on this matter because the videotape had not been played during his direct examination.