DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} On January 13, 2004, Defendant, William L. Alexander, was indicted for one count of aggravated murder in violation of R.C. 2903.01(A) with a firearm specification pursuant to R.C. 2941.145, one count of attempted murder in violation of R.C. 2903.02 with a firearm specification pursuant to R.C. 2941.145, and two counts of having a weapon under disability in violation of R.C. 2923.13(A)(3).
 {¶ 2} After a jury trial in the Summit County Court of Common Pleas, Defendant was convicted of complicity to murder under R.C. 2903.02 with a gun specification pursuant to R.C. 2941.145, felonious assault under R.C. 2903.11, and one count of having a weapon under disability under R.C. 2923.13.
 {¶ 3} The trial court sentenced Defendant to fifteen years to life for the charge of murder. Additionally, he was given a mandatory three year sentence on the firearm specification, and eight years for the crime of felonious assault, for a total prison term of twenty six years to life. Defendant appeals his convictions, raising three assignments of error for our review.
 ASSIGNMENT OF ERROR I
"[Defendant's] convictions for murder with a firearm specification and felonious assault were based upon insufficient evidence as a matter of law, and were against the manifest weight of the evidence."
 {¶ 4} In his first assignment of error, Defendant claims that his convictions for murder with a firearm specification and felonious assault were based on insufficient evidence and were against the manifest weight of the evidence. We disagree.
 {¶ 5} As an initial matter, this Court notes that the sufficiency and manifest weight of the evidence are legally distinct issues. State v.Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at ¶ 23, citing Statev. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its burden of production at trial, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3.
 {¶ 6} A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law. Thompkins,78 Ohio St.3d, at 386. In reviewing a challenge to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Clemons (1998), 82 Ohio St.3d 438,444, citing Jenks, 61 Ohio St.3d at 273.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Gulley, supra, at 3, citing Thompkins, 78 Ohio St.3d at 390. (Cook, J., concurring). When a defendant maintains that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 8} This court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility. Sykes Constr. Co. v. Martell
(Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038, at 5-6.
 {¶ 9} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) Statev. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. CuyahogaFalls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735, at 5.
 {¶ 10} Defendant was convicted of complicity to commit murder pursuant to R.C. 2903.02 with a firearm specification pursuant to R.C. 2941.145, and felonious assault pursuant to R.C. 2903.11. Felonious assault under 2903.11 states that "[n]o person shall "knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" Murder, R.C. 2903.02(A) provides that "[n]o person shall purposely cause the death of another[.]" R.C. 2923.03, complicity, provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * aid or abet another in committing the offense [.]"
 {¶ 11} A defendant who is guilty of complicity in the commission of an offense "[s]hall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F). In State v.Johnson (2001), 93 Ohio St.3d 240, the Ohio Supreme Court held that:
"to support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or initiated the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." Id. at 245-246.
 {¶ 12} On April 2, 2002, Defendant woke up and noticed that his car had been broken into, and approximately $2000.00 of stereo equipment had been stolen. The thief had left a cheeseburger in Defendant's car. Defendant and his cousin, Arthur Wilson (Wilson), went to a local gas station where the cheeseburger had been purchased. They were shown a videotape of a man buying a cheeseburger early in the morning wearing a jogging suit. Defendant and Wilson recognized the man as someone from the neighborhood, but did not know his name.
 {¶ 13} Later that day, Wilson and Defendant were driving around and noticed the man that they had seen in the video. They pulled over and asked him if he had stolen anything out of Defendant's car and then showed him the cheeseburger and asked if he left it in Defendant's car. Wilson testified that Khayree Rodgers (Rodgers) started to get scared and "things started getting hot." "[T]he next thing [Wilson] kn[e]w * * * [Defendant] had pulled a gun out and pulled the trigger and it just went click and didn't go off." Wilson stated that Defendant was pretty upset that the gun did not work. Defendant testified that he knew that the gun did not work, that he had taken it to a repair shop and was told that they could not fix it.
 {¶ 14} Defendant contends that the above evidence is insufficient to prove that he used a "deadly weapon" as necessary to sustain a conviction for felonious assault under R.C. 2903.11 since the gun was not working. "Deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried or used as a weapon." R.C. 2923.11. Defendant presented conflicting evidence at trial and in his former statements as to whether he thought that the gun could possibly fire bullets. However, even if the gun was unloaded, and even if Defendant was certain that it would not fire, it still could be defined as a dangerous weapon. In State v. Tate (1978), 54 Ohio St.2d 444, 445-446, the Ohio Supreme Court found that an unloaded gun used in an assault was a "deadly weapon" even where the evidence that the gun was unloaded and the fact that the defendant did not attempt to pull the trigger was uncontested. In this case, Defendant's gun was loaded, and he did pull the trigger. Thus, under Tate, Defendant's gun was a deadly weapon. See, also, Statev. Marshall (1978), 61 Ohio App.2d 84 (holding that an inoperable handgun can be a deadly weapon within the meaning of R.C. 2923.11.)
 {¶ 15} After the incident with Rodgers when Defendant's gun did not fire, Wilson and Defendant went to a friend's house and Defendant bought another gun, which Wilson described as a "big gun." Defendant stated that it was a .357 semi-automatic revolver that was loaded with five bullets. Defendant got back into the car and they drove around, drinking and smoking marijuana. They ran into a friend of Wilson's, Calvin Hunt (Hunt) at his apartment, and Hunt ended up getting in the vehicle with them. They decided to go to Frank's Place, a local bar. As they pulled into the parking lot, they saw Rodgers.
 {¶ 16} In the parking lot of Frank's Place, Wilson pointed Rogers out to the other two. Wilson testified: "that's when [Defendant] pulled the gun out and [Hunt] snatched the gun." Defendant testified that he had handed or slid the gun to Hunt. Wilson testified that Hunt then stated "I'm going to show you how to do this" to Defendant and jumped out of the car. They heard a "pop," then Hunt ran back to the car and told them to go. Defendant testified that he told Hunt "that was good looking" after Hunt had shot Rodgers. Defendant asked Hunt what he wanted after he had shot Rodgers and Hunt replied "well, just take care of me for something." The three then drove away leaving Rodgers bleeding on the sidewalk.
 {¶ 17} Melissa Murray Stokes went to Rockne's bar at about 1:00 am on April 3, 2002. As she walked up to the establishment she saw a man who was lying on the ground with blood spurting from his neck. She called 911. Officer Devin Pickett responded to the call and found Khayree Rodgers unresponsive and bleeding from the neck. Rodgers was transported to the hospital where he died on April 5, 2002.
 {¶ 18} After the shooting, Wilson and Defendant dropped Hunt off. They then drove to Michigan and stayed there for a few days. They made a few phone calls to Akron to determine whether or not there were any witnesses to the crime and whether they were suspects. They returned to Akron when they felt it was safe to come back. Defendant was indicted on January 13, 2004.
 {¶ 19} Defendant's conviction for complicity to commit murder with a firearm specification in violation of the murder statute, R.C. 2903.02, was not against the manifest weight of the evidence. Defendant suspected that Rodgers had broken into his car, and, rather than involve the police, Defendant went out searching for Rodgers. Defendant testified that he fired at Rodgers with a loaded.380 semi-automatic weapon, but no bullets discharged. Then he went and purchased another semi-automatic weapon. When Defendant saw Rodgers a second time, he either pulled out the new gun, whereupon Hunt grabbed it from him, or he gave the gun to Hunt. In either event, he supplied the gun and initiated Hunt in the commission of the crime. After Rodgers had been shot, Defendant essentially congratulated Hunt on work well done, telling him that "it was good looking" and asked what Hunt wanted. Defendant then went to Michigan for a few days and returned after he surmised that there were no witnesses. When Defendant returned from Michigan, rumors were circulating that Defendant had killed Rodgers. Defendant did not dispute any of those rumors.
 {¶ 20} During the trial, the prosecutor established that Defendant was either lying at trial, or had been lying to the police during his statement. The prosecutor noted that Defendant had discussed the crime in court four times prior to the trial and pointed out inconsistencies in his testimonies, including whether Defendant thought that the first gun could fire, whether he had thereafter gone on a "gunlooking mission," whether he had explained to Hunt that his car had been broken into, and whether he handed the loaded gun to Hunt after locating Rodgers, to name a few. In a jury trial, matters of credibility of witnesses are primarily for the trier of fact, therefore, we must give deference to the jurors' judgment. See State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13; State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence offered by the prosecution. State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. See, also, State v. Warren (1995),106 Ohio App.3d 753, 760.
 {¶ 21} From the evidence presented, the jury could find that Defendant was guilty of complicity to murder; that he had "supported, assisted, encouraged, cooperated with, advised, or initiated the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." Johnson, 93 Ohio St.3d 240, 245-246. The evidence persuades us that the jury neither lost its way nor created a manifest miscarriage of justice in convicting Defendant.
 {¶ 22} Having found above that the weight of the evidence supports Defendant's convictions, any issues concerning sufficiency of the evidence must be similarly disposed of. See Roberts, supra, at 8. Accordingly, Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The trial court erred in violation of [Defendant's] Sixth Amendment right to jury trial by imposing maximum and consecutive sentences."
 {¶ 23} In his second assignment of error, Defendant claims that the trial court erred by sentencing him to maximum, consecutive sentences in light of the mandates of Blakely v. Washington (2004), 124 S.Ct. 2531. He argues that the trial court made impermissible findings of fact which elevated his sentence. We disagree.
 {¶ 24} Defendant was convicted of murder under R.C. 2903.02. R.C.2929.02(B) provides that "[w]hoever is convicted of or pleads guilty to murder in violation of section 2903.02 of the Revised Code shall be imprisoned for an indefinite term of fifteen years to life[.]" In this case, Defendant was sentenced to the term provided, fifteen years to life. Defendant was also given a mandatory three-year term under R.C.2941.145 for a firearm specification.
 {¶ 25} Defendant was convicted of second degree felonious assault under 2903.11. R.C. 2929.14 provides that a prison term for a felony of the second degree shall be between two and eight years. Defendant was sentenced to eight years for his felony conviction, which is within the sentencing guidelines. Defendant's sentences were within the statutory guidelines and did not exceed the maximum.
 {¶ 26} The trial court directed that the mandatory prison term for the firearm specification was to be served consecutively to count one, and counts one and two were to be served consecutively to each other. Defendant's sentence for having a weapon while under disability was merged with his other sentences. Defendant argues that the trial court wrongfully imposed the above sentence.
 {¶ 27} In Ohio, to impose consecutive sentences, a trial court must find on the record that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C. 2929.14(E)(4). To impose a greater than minimum sentence on a first time offender, Ohio law requires that a trial court find that "the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B)(2).
 {¶ 28} Defendant does not allege that the trial court did not make the statutorily required findings on the record necessary to impose maximum, consecutive prison terms under Ohio law. He maintains that pursuant toBlakely, it is impermissible for the trial court, rather than a jury, to make the required findings of fact.
 {¶ 29} In State v. Jenkins, 9th Dist. No. 22008, 2005-Ohio-11, we discussed Blakely and its effect on Ohio's sentencing structure. InJenkins, as in the case at hand, the defendant argued that the trial court erred by sentencing her to morethan-minimum consecutive sentences in light of the mandates of Blakely. In Jenkins, we concluded that "Blakely does not bar an Ohio trial court judge from exercising his traditional sentencing discretion, in which the judge necessarily considers the facts of the underlying offense in making the determinations required under R.C. 2929.14(B)." Id. at ¶ 19. Thus, we hold in this case as well, that Blakely does not serve to bar the trial court from making the required findings under R.C. 2929.14 to impose greater than minimum, consecutive sentences. Therefore, the trial court did not err in imposing maximum, consecutive sentences after making the appropriate statutorily required findings of fact under R.C. 2929.14. Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"[Defendant] was denied the effective assistance of counsel at sentencing."
 {¶ 30} In his third assignment of error, Defendant states that if this Court were to find that the applicability of Blakely was waived by failing to raise it before sentencing to the trial court, then this Court should find that trial counsel rendered ineffective assistance of counsel.
 {¶ 31} Since we determined above that Blakely is inapplicable to the instant case, we find that Defendant was not denied effective assistance of counsel. Defendant's third assignment of error is overruled.
 {¶ 32} We overrule Defendant's three assignments of error and affirm the judgment of the Summit County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, J., Moore, J., concur.