[Cite as *State v. Sefcik*, 2014-Ohio-5792.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 101152

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**KEITH M. SEFCIK**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-577620-A

**BEFORE:** S. Gallagher, J., Jones, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** December 31, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
By: Paul Kuzmins
        Jeffrey Gamso
Assistant Public Defenders
Courthouse Square Suite 200
310 Lakeside Avenue
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Andrew Rogalski
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

{¶1}   Defendant Keith Sefcik appeals from his conviction for felonious assault following a bench trial.   For the following reasons, we affirm.

{¶2} On August 20, 2013, Sefcik spent the day golfing with his father at a course about 45 minutes away from Sefcik's house.   On the way to the course, Sefcik's wife Sandra called Sefcik about her lost car keys.   Eventually Sefcik realized he had accidently grabbed her keys, and Sandra became angry.   After finishing the round of golf around 2:00 in the afternoon, Sefcik and his father enjoyed a beer before driving back to Sefcik's house.   Sefcik was dropped off without incident, but upon entering the house, an argument occurred between Sefcik and Sandra.   Both argued the other was intoxicated.

{¶3} Sefcik's version of the argument is as follows.   The couple continued arguing about financial issues and Sandra's drinking.   The argument escalated, and Sefcik decided to leave.   Spending nights in a hotel was a regular occurrence because of the couple's tumultuous relationship.   Sefcik attempted to take Sandra's car because it blocked his in the driveway.   Sandra preferred otherwise.   Another disagreement erupted, and Sefcik went to get his car, which would not start.   Sandra called her father to come and help get Sefcik's car started, and the couple went back into the house to wait.   Sefcik made a sandwich and used a sharp kitchen knife in its preparation.

{¶4} Sandra's father testified that when he arrived, everyone was in the living room when he entered the house.   He attempted small talk, but Sandra asked if he could get to the car and let the couple finish discussing some things.   Sandra's father did not notice any marks on Sandra's face.   Sandra's father got Sefcik's car started, and Sefcik left, driving to a Speedway to get gas around 4:30-5:00 p.m.   Sefcik called his friend during that time, corroborated by his phone records.   Sefcik claims he briefly visited his brother and then checked into a hotel.   A

receipt for the hotel stay was introduced at trial. Sefcik testified that he did not return to his house until the next morning.

{¶5} Sandra's story is remarkably different. She claims that when Sefcik arrived home, they immediately began to argue because Sefcik, not she, was drunk. Almost immediately, Sefcik punched her with a closed fist so hard as to cause her to stumble backwards and cause a mark beneath her right eye. It was then that she called her father for help and went outside to wait in the driveway the 15 minutes it took her father to drive to the house. She claims she met her father in the driveway. After the car was started and her father and Sefcik left, Sefcik returned and forced his way into the kitchen where he grabbed the kitchen knife and held it against her neck. He then threw her through the screen door and down the concrete stairs from which she received visible cuts and bruising. Only then did Sefcik leave the house for the evening.

{¶6} Sandra's version of events before the car was started was contradicted by her father's and Sefcik's largely consistent versions. Additionally, at trial, the prosecutor showed Sandra a picture of her left eye, supposedly depicting the marks caused by Sefcik's closed-fisted punch, which was to her right eye. When confronted in cross-examination with this discrepancy, she admitted there was no mark from the punch, corroborated by her father's testimony that he did not see a scratch near her eye upon first arriving. She further admitted to not looking to see if the punch even caused a mark.

{¶7} The incident in the kitchen is the prototypical he-said/she-said type of event. She claimed he held a knife to her throat and threw her down the concrete stairs. He claimed he was not even there. A DNA test was conducted on the knife, which the state introduced at trial through stipulation. The results confirmed that Sefcik held the knife at some point in time, an

issue not really in dispute, but that Sandra's DNA was not on the knife despite her claims that the knife was held to her neck as Sefcik threw her down the stairs. The state introduced pictures depicting the injuries Sandra suffered from being thrown down the stairs, partially corroborating her version of events in the kitchen.

{¶8} Upon hearing that evidence at the bench trial, the trial court found Sefcik guilty of felonious assault in violation of R.C. 2903.11(A)(2), aggravated menacing, and one count of domestic violence. At sentencing, the trial court merged all the counts for the purposes of sentencing. The state elected to proceed on the felonious assault count, and Sefcik was sentenced to serve five years in prison. Sefcik appealed, raising two assignments of error challenging the sufficiency and manifest weight of the evidence supporting the felonious assault conviction, claiming that there is no credible evidence a deadly weapon was used in the attack on Sandra. He did not otherwise challenge the aggravated menacing or domestic violence convictions. We find no merit to his claim that the manifest weight of the evidence does not support the trial court's verdict of guilt for felonious assault as indicted.[1]

{¶9} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678

---

[1]We summarily reject Sefcik's argument that the verdict is against the sufficiency of the evidence, which entirely omits any consideration of a witness's credibility. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. If Sandra's story is believed, Sefcik pulled a knife and held it against her neck during the assault. Such conduct satisfies the elements of felonious assault with a deadly weapon in and of itself.

N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.* A claim that a jury verdict is against the manifest weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193.

{¶10} Sefcik was convicted of felonious assault, which provides in pertinent part that no person shall attempt to cause physical harm to another by means of a deadly weapon. R.C. 2903.11(A)(2). In order to convict Sefcik of this violation, the state needed to prove beyond a reasonable doubt that Sefcik used the knife in the attempt to harm Sandra. The knife was the only instrument claimed to have been used as a deadly weapon, but Sefcik does not otherwise challenge the verdict finding him guilty of attacking Sandra.

{¶11} Sefcik's arguments largely revolve around Sandra's credibility, which although a liability, was not dispositive. Her testimony is admittedly contradicted by extrinsic evidence at points. However, and as specifically relates to the events that occurred in the kitchen, Sandra claimed Sefcik held the knife to her throat during the attack. DNA testing revealed that the knife's blade was devoid of any indication that it came into contact with her, but indicated that Sefcik handled the knife. Although we find it problematic that the state offered no evidence explaining this discrepancy, all that is required to convict Sefcik of felonious assault is that he attempted to cause harm with a deadly weapon.

{¶12} We are aware that in *State v. Carpenter*, 8th Dist. Cuyahoga No. 91769, 2009-Ohio-3593, ¶ 28-29, a panel of this court reversed a conviction as being against the manifest weight of the evidence when extrinsic evidence demonstrated that the injury did not occur as described by the victim. In that case, the victim testified that serious physical harm

was inflicted because the defendant beat her with a metal rod causing fractured ribs and contusions. *Id.* The victim's actual hospital records from her immediate treatment indicated that she was not in pain, and no x-rays were even taken or deemed necessary based on the fact that her only complaints of injury were psychological. *Id.* In consideration of the contradictory, extrinsic evidence, a panel of this court determined that the jury lost its way in finding the defendant guilty of severely beating the victim. *Id.* *Carpenter* is inapplicable to the facts of the current case.

{¶13} In this case, the DNA test indicates that the knife was devoid of any of Sandra's DNA. Actually causing injury with the knife, however, is not an element of felonious assault pursuant to R.C. 2903.11(A)(2); it suffices that a knife was merely used in the attempt to harm the victim. *State v. Alexander*, 9th Dist. Summit No. 22295, 2005-Ohio-2393, ¶ 14, citing *State v. Tate*, 54 Ohio St.2d 444, 445-446, 377 N.E.2d 778 (1978). In *Tate,* the Ohio Supreme Court held that pointing an unloaded firearm at a victim, even if the offender does not pull the trigger and is aware the weapon is unloaded, is sufficient to sustain a felonious assault with a deadly weapon conviction pursuant to R.C. 2903.11(A)(2). Nothing distinguishes the fact of holding a knife to a victim's throat from pulling an unloaded gun and pointing it at the victim in terms of determining whether the weapon was used in an attempt to harm the victim. Unlike in *Carpenter* where the extrinsic evidence contradicted the mode of injury, the DNA evidence does not contradict Sandra's testimony that the knife was used, only that the knife caused harm. Although Sefcik identifies inconsistencies within Sandra's testimony, she was deemed credible by the trier of fact and there is evidence substantiating her claims.

{¶14} Generally we must give deference to the trier of fact who has the opportunity to assess the victim's demeanor and inconsistencies. Such deference can be afforded in situations

where the victim's inconsistencies are "not so great that the jurors [or trier of fact] could not have resolved them based on personal observations of the witness and the remaining evidence." *State v. Wente*, 8th Dist. Cuyahoga No. 81850, 2003-Ohio-3661, ¶ 15. Courts may review whether the inconsistencies can be explained by the victim's incomplete memory, the stress of testifying, her lack of education, her inability to understand the questions, or a combination of the preceding, in determining whether to determine the verdict is against the manifest weight of the evidence. *Id.*

{¶15} There is some evidence, if believed, that Sefcik at least held a knife to Sandra's throat during the attack, and thus we are limited to determining whether the credible evidence demonstrated the use of a deadly weapon. Although the DNA evidence indicates the knife may not have actually caused discernible physical harm during the attack and the victim demonstrated credibility issues, Sandra's testimony was not completely incredible. There was physical evidence supporting her version of events in the kitchen. We hold that the felonious assault conviction based on using a deadly weapon during the attack was not against the manifest weight of the evidence. Even though the particular physical harm does not come to fruition, evidence demonstrating that the defendant held a knife to a victim's throat is sufficient to conclude that the offender attempted to cause physical harm with a deadly weapon.

{¶16} The trial court heard all the evidence, including the inconsistencies in Sandra's testimony, and determined Sandra credible on whether the knife was used. In this he-said/she-said type of case with limited physical evidence, we must defer to the trier of fact's resolution of disputed facts. Nothing in the record indicates the trier of fact clearly lost its way. Sefcik's assignments of error are overruled, and his conviction for felonious assault pursuant to R.C. 2903.11(A)(2) is affirmed.

It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
TIM McCORMACK, J., CONCUR