THE STATE OF OHIO, APPELLEE, *v.*
MARSHALL, APPELLANT. ■

[Cite as State v. Marshall (1978), 61 Ohio App. 2d 84.]

(No. 78AP-348—Decided October 26, 1978.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Alan C. Travis,* for appellee.

*Mr. James Kura,* and *Mr. Gregory L. Ayers, Mr. Michael Thomas,* for appellant.

REILLY, J. This is an appeal from a judgment of the Court of Common Pleas of Franklin County. Appellant was tried by a jury and found guilty of aggravated robbery.

The transcript shows that Susan Erb testified that on February 15, 1978, she was a customer in a Lawson store, talking to an employee, Shelda Findly. A man, whom she identified in open court as appellant, came into the store and asked Shelda Findly for several items and for change. Shelda Findly further testified that after receiving the change the man "reached back and pulled a gun," and said "Give me the money." Then, she said, another man entered the store, and Shelda Findly testified that she told him what had happened.

She recalled that he left the store and returned shortly thereafter with a license number. Michael Burkhart was the man who came into the store and secured the license number. He testified that when he entered the store the cashier told him that she had just been robbed. He said he ran out of the store and saw several cars in the back parking lot, one of which had a man getting into it. He obtained the license number of the car.

Harold Green, of the Columbus Police Department, testified that, after receiving a dispatched description of the car, he stopped the automobile which appellant was driving that met such identification. Officer Green said that he drew his revolver, pointed it at appellant, and told him to position himself against the auto. Officer Green stated that he frisked Marshall and placed him in the rear of his patrol cruiser. Officer Green also stated that in appellants vehicle he found an automatic revolver which he later discovered was plugged, inoperable, and would probably explode if fired. Further, Officer Green testified that he found a wad of money in one of the pockets of appellant's trousers.

Appellant testified that just prior to his arrest he had spent approximately one-half hour at a gasoline station. He said that he called Barbara Harvey, his friend's wife, at about 1 p.m., when the robbery was taking place. He also testified that his little girl had been playing with the gun and that was the reason he took it from the house and placed it in his car.

Appellant testified that while in the police cruiser he overheard officers discussing armed robbery and assumed they might try to blame him. Therefore, he said he had attempted to hide the money which he had won the previous evening in a game of chance. On cross-examination, he denied entering the Lawson store, and testified that he knew the gun found in his car was inoperable.

Barbara Harvey testified that she did not talk with appellant on the day of the robbery, but that she did receive a documented message that he had called around the time the robbery was committed.

The trial court instructed the jury concerning the definition of a deadly weapon, and responded to questions by the jury to repeat the foregoing definition, along with the definition of robbery without a deadly weapon, and the elements necessary for aggravated robbery. There were no objections by counsel to the trial court's charge or the answers to the questions presented by the jury.

This appeal has now been perfected, including the following assignment of error:

"The Trial Court erred in overruling defendant-appellant's motions for acquittal and his conviction for aggravated robbery is contrary to law since the inoperable

replica of a gun employed in the robbery cannot be considered a deadly weapon as defined by Ohio Revised Code Section 2923.11 (A)."

*State* v. *Maynard,* unreported, Tenth Appellate District, No. 75AP-676, rendered June 24, 1976, is dispositive of this appeal. At any rate. R. C. 2923.11 reads, in pertinent part, as follows:

"(A) 'Deadly weapon' means any instrument, device or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.

"(B) 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable."

The test of a deadly weapon is whether it is capable of inflicting death. The actual use of the weapon doesn't require the same means for which it was designed. The gun in this case was a deadly weapon even though plugged and inoperable. The record shows that it was used as a weapon as part of a robbery. A firearm, as defined by R. C. 2923.11 (B), is a deadly weapon. A deadly weapon, however, is not limited to firearms because R. C. 2923.11 (A) defines "deadly weapon" to include anything capable of inflicting death for use as a weapon. A gun may inflict death in two ways: (1) in the manner for which it was designed by firing a bullet; (2) by being used as a bludgeon. An inspection of the gun in this case shows that it was capable of inflicting death if used as a bludgeon.

The sole remaining question was whether appellant used it as a weapon. It is reiterated that the record leaves no doubt that appellant did in fact use the gun as a weapon. It was used to commit a robbery and for intimidating the victim of the robbery. The gun was capable of inflicting death when used by appellant as a weapon in committing this offense. This gun meets the definition of "deadly weapon" (R. C. 2923.11 [A]) even if it was not a "firearm" as provided by R. C. 2923.11 (B). The gun was capable of inflicting death when used by appellant in committing this offense.

Moreover, the trial court properly instructed the jury as to the definition of "deadly weapon" and the factors to be considered in whether the gun was used as a deadly weapon. The trial court specifically defined a deadly weapon as an object or instrument of such size and weight, shape or design that it may be grasped in the hands and directed against the body of another in a manner and with such force as to kill the other person. In addition, the trial court correctly instructed the jury concerning the intent to use an object as a deadly weapon, and correctly stated that the manner of use was not an element of the offense.

The trial court's specific response to the jury's question, or questions, upon these issues is quoted, in pertinent part:

"The Defendant is charged with aggravated robbery; before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 15th day of February, 1978, in Franklin County, the Defendant obtained, or attempted to obtain, or fled after attempting to obtain, property of some value, however small, for the purpose of depriving the Lawson Milk Company of that property.

"Secondly, you must find that the Defendant had a deadly weapon on or about his person or under his control.

"I have defined what a deadly weapon is, and I will do so once again.

"A deadly weapon is any instrument, device or thing, capable of inflicting death. In determining whether an instrument was used as a deadly weapon, you will consider its nature, its capability of being used to inflict deadly harm and you may consider the manner in which you have found it was used or threatened to be used in this case.

"Further, a deadly weapon is an object or instrument of such size and weight and of such shape or design that it may be grasped in the hand or hands in such a way that it may be used upon or directed against the body of another in a manner and with such force to kill the other person.

"It is a question of fact for you to determine whether or not the object or instrument claimed that has been used by the Defendant was a deadly weapon as used or threatened to be used in this case.

88

"Proof of fear or apprehension on the part of the person against whom the weapon is used or threatened is not required."

In sum, the trial court did not err in overruling appellant's motions for acquittal, and the judgment is not contrary to law. Accordingly, for the foregoing reasons, appellant's assignment of error is not well taken and is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and McCORMAC, JJ., concur.