**In re FORTNEY.**

[Cite as *In re Fortney,* 162 Ohio App.3d 170, 2005-Ohio-3618.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 05CA5.

Decided July 13, 2005.

174

David H. Bodiker, Ohio Public Defender, and Elizabeth Miller, Assistant Public Defender, for appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Raymond E. Dugger, Assistant Prosecuting Attorney, for appellee.

KLINE, Judge.

{¶ 1} John Fortney appeals the judgment of the Washington County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child. Fortney argues, in part, that the trial court entered a judgment unsupported by sufficient evidence and against the manifest weight of the evidence. Because we find that the evidence admitted at trial could convince a reasonable factfinder of Fortney's guilt and because substantial evidence supported the judgment, we disagree. Fortney also contends that the trial court violated his due process rights when it overruled his motion for a continuance. Because we find that the trial court acted within its sound discretion when it denied the motion for a continuance, we disagree. Finally, Fortney asserts that he received ineffective assistance of counsel because the trial court denied his motion for a continuance. Because Fortney cannot show that his trial counsel acted deficiently, we disagree. Accordingly, we affirm the judgment of the trial court.

I

{¶ 2} On November 12, 2004, the state filed a complaint alleging that John Fortney, age 15, perpetrated an act, which, if committed by an adult, constitutes felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony. Specifically, the complaint alleged that Fortney "knowingly caused serious physical harm to Zachariah Mugrage by means of a deadly weapon or dangerous ordinance."

{¶ 3} On November 14, 2004, the trial court held a detention/shelter care hearing and ordered Fortney committed to the Washington County Juvenile Detention Center pending the outcome of his adjudicatory hearing. The trial court then ordered an adjudicatory hearing for December 20, 2004.

{¶ 4} Five days before the adjudicatory hearing, Fortney's counsel requested a continuance on the basis that the state had delivered discovery only the previous week, thus necessitating extra time for defense counsel to prepare for trial. The trial court denied the motion on December 17, 2004. At the beginning of the adjudicatory hearing, defense counsel renewed her request, claiming that she had received discovery on December 6, 2004, and that supplemental discovery arrived only the week before. The trial court denied the motion, stating, on the record: "Due to the court's terribly busy docket, and the fact that the child is in detention, the court wants to keep this case moving to resolution one way or the other, so the child is not just languishing in detention. So the court is going to deny the motion to continue again. * * * If you were dissatisfied with the speed of the discovery, there's motions to compel that could have been filed, and—or a

call to the court. We could have addressed that, rather than the day of the hearing."

{¶ 5} In its case-in-chief, the state claimed that Fortney had knowingly caused serious physical harm to the victim with a deadly weapon or dangerous ordnance. Specifically, the state alleged that Fortney, carrying a large stick as a weapon, had gone to the victim's home street, approached the victim in an aggressive manner, instigated an altercation, and assaulted the victim with the stick, causing a hairline fracture to the victim's right arm. As evidence, the state presented the testimony of five witnesses and entered the stick and the victim's medical records into evidence.

{¶ 6} Zachariah Mugrage, the victim, testified that he had spent the evening before the altercation with Ben Foster and Fortney. Mugrage punched Fortney that evening because Fortney had made an unwelcome sexual advance. The next day, Fortney called Mugrage, instigated an argument, and threatened to come and assault Mugrage. Mugrage left his home and began walking down Tice Avenue. As he was walking, Fortney approached him, carrying a large stick. Fortney swung the stick at Mugrage three times. Mugrage ordered him to put the stick down and "fight like a man" and then obtained a baseball bat from Jonathan Matthew Krenisky. Mugrage then chased Fortney around Krenisky's trailer. With Mugrage chasing Fortney, both children ran back to the street. Mugrage testified that Fortney swung the stick again, at which time Mugrage blocked the blow with his left arm, which suffered a fracture.

{¶ 7} Mugrage further testified that after Fortney had hit his arm with the stick, Alice Foster, a neighbor, came out of her home and restrained him. As Alice intervened, Mugrage threw the baseball bat at Fortney. Fortney then retreated, but only after Alice ordered him to return home and threatened to call his parent. After the altercation, Mugrage's family took him to the hospital, where he was treated for a broken arm.

{¶ 8} Ben Foster, a neighbor and Mugrage's friend, testified that he had heard the beginning of the altercation from inside his home. He went to his front door and saw the children standing six feet apart from each other, engaged in a verbal altercation. Ben testified that Fortney was holding a large stick in his hand. Mugrage asked Ben if he had a shovel or bat that he could use, but Ben refused to become involved. Mugrage then obtained a baseball bat from Krenisky and began to chase Fortney around Krenisky's home. When the boys returned to the street, Ben's mother, Alice, came outside and restrained Mugrage. As Alice put him in a headlock, Mugrage swung the bat and hit Fortney in the lower left side of his back. Then, Fortney retreated a small distance, and Mugrage threw the baseball bat at him. Ben did not witness Fortney hit Mugrage with the stick, but did identify the stick entered into evidence as the one Fortney had used to hit

Mugrage. Ben also testified that Fortney had dropped the stick after the chase around Krenisky's home, but before Mugrage hit him with the bat.

{¶ 9} Alice Foster, a neighbor and Ben's mother, testified that she had heard an altercation outside her home and intervened by restraining Mugrage. She claimed that she had chosen to restrain Mugrage because he was physically closer to her than Fortney and because she knew him. As she restrained Mugrage, Fortney was swinging the stick at him. Mugrage was yelling and screaming and still had the baseball bat in his hands. He then threw the bat in Fortney's direction, although she did not observe whether the bat actually hit Fortney. Alice testified that as she restrained Mugrage, he was screaming at Fortney to continue the fight. After he dropped the baseball bat, she laid him on the ground, began to calm him down, ordered Fortney to return home, and then noticed the swelling on Mugrage's right arm. On cross-examination, she admitted that when she entered the altercation both boys were swinging at each other.

{¶ 10} John Matthew Krenisky, a neighbor and Mugrage's friend, testified that he had witnessed the altercation. He recalled that Fortney had approached with a stick and admitted that he had given Mugrage a baseball bat to use in the fight. Mugrage then chased Fortney around his trailer, while holding the baseball bat. When the boys returned to the street, Fortney swung at Mugrage. Mugrage blocked the blow with his arm. Krenisky also testified that Mugrage had hit Fortney in the back with the baseball bat while Alice Foster attempted to restrain him.

{¶ 11} Finally, Officer A.J. Linscott, an officer with the Marietta Police Department and the Marietta Middle and High School resource officer, testified that he had investigated the altercation after it was reported to him by a third party. At the conclusion of his investigation, he felt it appropriate to file a complaint against Fortney.

{¶ 12} In summary, out of three observers, only Krenisky saw Fortney actually hit Mugrage with the stick. Both Ben and Krenisky testified to witnessing Mugrage hitting Fortney in the back with the baseball bat and then throwing the bat at Fortney. Ben, Krenisky, and Mugrage identified the stick entered into evidence as the one Fortney carried during the altercation.

{¶ 13} In his defense, Fortney argued that Mugrage, angry over an unwelcome sexual advance, had acted as the initial aggressor in the altercation, attacked Fortney, and then suffered an injury when he tripped and fell. The defense claimed that Alice had restrained Mugrage because he was the aggressor and insinuated that Mugrage did not report the altercation because he was the aggressor. As evidence, the defense offered the testimony of one witness, Brandon Haught, and questioned the credibility of three of the state's witnesses

due to their relationships with the victim and the inconsistencies in their testimony.

{¶ 14} Brandon Haught testified that he had observed the altercation while he was working at the Colgate Food Center. According to Haught, he went outside the food center for ten to 15 minutes to work on the store signs. He observed Fortney walking up the street, with nothing in his hands. He then saw Mugrage, with a baseball bat in his hands, run toward Fortney and begin a chase. As Mugrage ran, he tripped and fell. Haught admitted that he had not seen Alice or Ben Foster, that it was twilight at the time of the altercation, and that many people were outside. Finally, Haught testified that he knows Fortney as a customer in the food center, but that he does not have a personal relationship with the child or the child's family.

{¶ 15} In its judgment entry, the trial court found that (1) Fortney had initiated the altercation "by approaching [Mugrage] and threatening him with a heavy tree limb * * * approximately 4 feet in length and 5½ inches in circumference," (2) the fight had occurred because Mugrage punched Fortney for propositioning him, (3) Fortney had swung the stick three times and missed, causing Mugrage to chase him with a baseball bat, (4) after the chase, Fortney had swung again and hit Mugrage in the arm, causing it to break, and (5) Mugrage had thrown the baseball bat at Fortney, hitting the child in the back, after his arm was broken. Finding Fortney the aggressor, the trial court determined that striking another child's arm with a stick and causing the arm to fracture constitutes "serious physical harm" and concluded that the stick was a deadly weapon because it was capable of inflicting death and was possessed, carried, and used as a weapon.

{¶ 16} The trial court adjudicated Fortney a delinquent child for an act which, if committed by an adult, constitutes a violation of R.C. 2903.11(A)(2), a second-degree felony. The court ordered Fortney committed to the Ohio Department of Youth Services for a minimum of one year and a maximum not to exceed his twenty-first birthday.

{¶ 17} Fortney appeals and asserts the following assignments of error: "I. The trial court violated John Fortney's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, and Juv.R. 29(E)(4) when it adjudicated him delinquent of felonious assault absent proof of every element of the charge against him by sufficient, competent, and credible evidence. II. The trial court violated John Fortney's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution when it adjudicated him delinquent of felonious assault when that finding was against the manifest weight of the evidence. III. The trial court violated John

Fortney's right to due process by failing to grant a continuance in violation of Juv.R. 23, the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 16 of the Ohio Constitution. IV. John Fortney was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

## II

{¶ 18} In his first and second assignments of error, Fortney argues that the trial court's judgment is supported by insufficient evidence and is against the manifest weight of the evidence. Because "[t]he legal concepts of sufficiency * * * and weight of the evidence are both quantitatively and qualitatively different," we address these arguments separately. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.

{¶ 19} A trial court may adjudicate a juvenile as a delinquent child when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E). Thus, when reviewing claims involving the sufficiency of the evidence and the manifest weight of the evidence within the juvenile context, we apply the same standards of review applicable to criminal convictions. *In re Watson* (1989), 47 Ohio St.3d 86, 91, 548 N.E.2d 210.

{¶ 20} R.C. 2903.11(A)(2) defines felonious assault as "knowingly * * * caus[ing] or attempt[ing] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Although the statute does not require the state to prove "serious" physical harm, because the state inadvertently inserted the word "serious" in the charge against Fortney, it was required to prove that element to sustain a delinquency adjudication. However, because Fortney does not dispute that breaking another child's arm constitutes serious physical harm, we do not find it necessary to address the word "serious" as it relates to the sufficiency of the evidence and the manifest weight of the evidence.

### A

{¶ 21} Fortney argues that the trial court's judgment is supported by insufficient evidence because the state failed to provide evidence sufficient to establish that he had (1) *knowingly* caused physical harm to the victim, (2) actually caused the victim's injury, and (3) utilized a dangerous weapon.

{¶ 22} When reviewing a conviction to determine if it is supported by sufficient evidence, the appellate court's function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince

the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 23} This test raises a question of law and does not allow the appellate court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 79–80, 24 O.O.3d 150, 434 N.E.2d 1356; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Whether the evidence supporting a juvenile's delinquency adjudication is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus.

1

{¶ 24} We first address Fortney's argument that sufficient evidence does not support the trial court's finding that he acted *knowingly*. Fortney argues that the state failed to prove that he (1) knew that his conduct would cause a certain result, i.e., that if he swung the stick it would break the victim's arm, or (2) planned to strike the victim. For the latter argument, Fortney contends that the victim's arm broke not because he intended to hit the arm, but because the victim used his arm to block the blow from the stick.

{¶ 25} According to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." When the issue in dispute is a juvenile's purpose or intent, it is necessary to rely upon circumstantial evidence because intent cannot be proved by a third person's direct testimony, but must be gathered from the surrounding facts and circumstances. *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293.

{¶ 26} Here, the trial court found that Fortney had acted as the initial aggressor by approaching the victim for the purpose of instigating a physical fight, with a large stick in his hands. The trial court concluded that Fortney had swung the stick at the victim three times before the chase around Krenisky's home and then swung it a fourth time and hit the victim's arm. Viewing this evidence in a light most favorable to the prosecution, we find that the average mind could be convinced, beyond a reasonable doubt, that Fortney acted knowingly when he caused physical harm to the victim.

{¶ 27} Fortney arrived at the scene of the altercation for the purpose of fighting with the victim. He brought a large stick, described by the trial court as being approximately four feet in length and six inches in circumference, and swung that stick at the victim four times during the heated exchange. Given the size of the stick, which this court has reviewed, sufficient circumstantial evidence is present to conclude that Fortney knew, or probably knew, that the act of swinging the stick would result in physical harm if it connected with his intended victim.

{¶ 28} Also, we find Fortney's argument that the state failed to prove he acted knowingly because he would not have hit the victim's arm if the victim had not raised the arm to block the stick absurd and irrational. The fact that the stick struck the victim's arm instead of another body part is irrelevant. The only relevant question is whether Forntey intended to use the stick to strike the victim and cause physical harm. Swinging a stick of that size, in an aggressive manner, during a fight initiated by the appellant, necessarily implies intent regardless of the body part the appellant intended to strike.

2

{¶ 29} We next turn to Fortney's assertion that the state failed to prove, beyond a reasonable doubt, that he actually caused the victim's injury. Fortney contends that the trial court's conclusion is supported by insufficient evidence because (1) Ben Foster testified that he had not seen Fortney strike the victim, but had seen the victim strike Fortney, (2) Alice Foster testified that she had restrained the victim, who was yelling to continue the fight, (3) the victim complained that his right arm hurt, but it was his left arm that was injured, (4) John Matthew Krenkisky testified that the victim had struck Fortney with a baseball bat, and (5) Brandon Haught testified that he had observed the victim chasing Fortney behind the trailer and that the victim initiated the chase against an unarmed Fortney and then fell during that chase. Fortney argues that this evidence actually proves that he was not the aggressor and that the victim broke his arm while chasing Fortney behind the trailer.

{¶ 30} At the outset, we note that when reviewing a delinquency adjudication for sufficient evidence, we will not disturb a trial court's resolution of the weight and credibility of the evidence and proffered testimony. *Martin,* 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717; *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Thomas,* 70 Ohio St.2d at 79–80, 24 O.O.3d 150, 434 N.E.2d 1356; *DeHass,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, at paragraph one of the syllabus.

{¶ 31} While it is true that Ben Foster testified that he had not seen Fortney strike the victim, he also testified that he had seen the entire altercation from inside his home. Krenisky, who was outside during the altercation, did witness Fortney strike the victim, and the victim testified that he had used his arm to block Fortney's strike. The trial court was free to apply greater weight to the testimony of the victim and Krenisky, who more closely observed the entire altercation, and to believe their testimony. Their testimony provides sufficient evidence upon which the average mind could conclude, beyond a reasonable doubt, that Fortney struck the victim.

{¶ 32} Fortney also points to Alice Foster's testimony that she chose to restrain the victim and that, while attempting that restraint, she heard the victim yelling to continue the fight, as proof that the victim was the actual aggressor. Fortney reasons that if Mugrage were a victim, and not the aggressor, Alice would have chosen to restrain Fortney instead. He also asserts that the victim's yells to continue the fight prove that he was the aggressor. We disagree.

{¶ 33} Alice Foster testified that she had chosen to restrain the victim for two reasons: (1) the victim was in closer physical proximity to her than Fortney and (2) she knew the victim and felt more comfortable restraining him than Fortney, with whom she was not familiar. In her testimony, Alice admitted that she had feared for her own safety when she was restraining the victim because Fortney picked up the thrown baseball bat and walked toward her, from behind. Given this testimony, the state provided sufficient evidence from which the trial court could reasonably conclude, beyond a reasonable doubt, that Fortney was the aggressor despite Alice's choice to restrain the victim. It was within the province of the trial court to find her testimony credible, and we will not disturb this finding.

{¶ 34} Next, Fortney argues that the delinquency adjudication is unsupported by sufficient evidence because the victim complained, immediately after the altercation, that his right arm ached from the blow, but it was his left arm that was actually broken. We disagree. The medical reports show that the victim suffered a fractured left arm. The victim testified that he had used his right arm to throw the baseball bat at Fortney after he was struck in the arm. Krenisky testified that he had seen Fortney strike the victim in the arm and used

indications to show the court where and how the strike occurred. While these indications are not clearly explained in the transcripts, the trial court was able to observe them in court. The only testimony contrary to this came from Alice, who testified that she had noticed the victim's right arm swelling after the altercation. However, neither the prosecution nor the defense asked her to clarify this position, and it can be reasonably inferred, given the other testimony and evidence, that she referred to the victim's right arm according to her left-right orientation rather than the victim's. Thus, the state presented sufficient evidence upon which the trial court could conclude, beyond a reasonable doubt, that the victim suffered a fractured left arm.

{¶ 35} Fortney also points to Krenisky's testimony that he had seen the victim strike Fortney with the baseball bat as proof that he was not the aggressor in the altercation. We disagree. Krenisky did testify that he had witnessed the victim strike Fortney in the lower back, as did Ben Foster. However, Krenisky testified that he had seen the victim strike Fortney *after* Fortney struck the victim. Thus, despite evidence that the victim struck Fortney, the state presented sufficient evidence to convince the average mind, beyond a reasonable doubt, that Fortney acted as the initial aggressor and caused the victim's injury.

{¶ 36} Finally, Fortney argues that Brandon Haught's testimony proves that the victim sustained his injury by initiating a chase and falling to the ground during that chase. It is true that Haught's testimony, if believed, provides an alternate manner in which the victim sustained his injury. However, Haught also testified that (1) he was working while the altercation occurred, and thus, did not continuously observe the fight, (2) it was twilight, which could have obstructed his observations, and (3) many people were outside, possibly blocking his view. Given these factors, the trial court could reasonably conclude that Haught's testimony lacked credibility, not for failure of honesty, but due to an obstructed view. We will not upset the trial court's judgment in resolving the credibility of proffered testimony. Accordingly, viewing the evidence in a light most favorable to the prosecution, we conclude that the average mind could determine, beyond a reasonable doubt, that the victim's injury occurred not because of a fall, but due to Fortney striking the victim with a large stick.

3

{¶ 37} In his final argument contesting the sufficiency of the evidence, Fortney argues that the state failed to prove, beyond a reasonable doubt, that the stick meets the definition of a deadly weapon. Fortney asserts that a stick is not an inherently dangerous weapon and that the state failed to prove otherwise in this particular case.

{¶ 38} R.C. 2923.11(A) defines a deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specially adaptable for use as a weapon, or possessed, carried, or used as a weapon." Thus, the state must meet a two-prong test to prove that the weapon in question is a deadly weapon. First, the weapon must be an "instrument, device, or thing capable of inflicting death." R.C. 2923.11(A). Second, the weapon must be "designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Id. Whether a weapon constitutes a deadly weapon depends on the facts and circumstances of each particular case. See *State v. Byrd* (Nov. 20, 1986), Clark App. No. CA 2232, 1986 WL 13239, citing *Dayton v. Cooper* (July 9, 1986), Montgomery App. No. 9341, 1986 WL 7708.

{¶ 39} One method of establishing a deadly weapon is through the "bludgeon theory." Under this theory, the prosecution can meet the definition of a deadly weapon even if the weapon in question is incapable of inflicting death by firing a projectile, by proving that the weapon is capable of bludgeoning a person to death. *State v. Gaines* (1989), 46 Ohio St.3d 65, 68, 545 N.E.2d 68, citing *State v. Hicks* (1984), 14 Ohio App.3d 25, 14 OBR 29, 469 N.E.2d 992; *State v. Marshall* (1978), 61 Ohio App.2d 84, 15 O.O.3d 93, 399 N.E.2d 112. Moreover, a factfinder may "infer the deadly nature of an instrument from the facts and circumstances of its use." *State v. Vondenberg* (1980), 61 Ohio St.2d 285, 289, 15 O.O.3d 349, 401 N.E.2d 437. Other courts have held that a wood stick, when used as a club, may constitute a deadly weapon. *State v. Murray*, Lake App. No. 2003–L–045, 2005-Ohio-1693, 2005 WL 820540, ¶ 27, citing *State v. Pope* (Oct. 4, 1990), Logan App. No. 8–89–19, 1990 WL 157268; *State v. Berry*, Cuyahoga App. No. 82772, 2003-Ohio-6642, ¶ 13–14, 2003 WL 22923248, citing *State v. Scott*, Cuyahoga App. No. 81235, 2003-Ohio-5374, 2003 WL 22305170; *State v. Ridley*, Cuyahoga App. No. 82164, 2003-Ohio-3961, 2003 WL 21714094, citing *State v. Shannon* (Sept. 2, 1987), Lorain App. No. 4216, 1987 WL 16651.

{¶ 40} Here, the trial court found that the weapon in question was (1) an instrument, device, or thing capable of inflicting death and (2) possessed, carried, or used as a weapon. For the former finding, the trial court reasoned that the stick in question, which was approximately four feet in length and six inches in circumference, could cause death if it was used to bludgeon a victim's head. The trial court found that the stick was possessed, carried, or used as a weapon because Fortney, acting as the initial aggressor, armed himself with the stick and swung it at the victim.

{¶ 41} Fortney provides no clear argument why insufficient evidence supports this finding. The state entered the stick into evidence and three of the witnesses identified the stick as the one Fortney carried. This court has seen the stick in question and agrees with the trial court that it is of such a size and thickness as

to be an instrument, device, or thing capable of inflicting death by bludgeoning. Thus, the state presented sufficient evidence to prove that Fortney had knowingly caused physical harm to the victim and acted as the aggressor in the altercation. Consequently, we find that sufficient evidence supports the trial court's finding that the stick constituted a deadly weapon pursuant to R.C. 2923.11(A).

4

{¶ 42} In review, the state presented sufficient evidence to prove, beyond a reasonable doubt, that Fortney knowingly caused the victim physical harm with a deadly weapon. The evidence presented could convince the average mind, beyond a reasonable doubt, that Fortney is delinquent. Accordingly, we overrule Fortney's first assignment of error.

B

{¶ 43} In his second assignment of error, Fortney argues that the trial court's adjudication is against the manifest weight of the evidence. Specifically, Fortney contends that the manifest weight of the evidence proves that he did not (1) act knowingly, (2) actually cause the victim physical injury, and (3) use a deadly weapon.

{¶ 44} The test under the manifest-weight standard is much broader than that for sufficiency of the evidence. *State v. Banks* (1992), 78 Ohio App.3d 206, 214, 604 N.E.2d 219; *State v. Martin*, 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717. In determining whether a delinquency adjudication is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed. *Elyria v. Tress* (1991), 73 Ohio App.3d 5, 7, 595 N.E.2d 1031, citing *State v. Martin*, 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717; see, also, *In re Wolfe* (June 11, 1992), Pickaway App. No. 91CA21, 1992 WL 129314.

{¶ 45} An appellate court will not reverse a delinquency adjudication when there is substantial evidence upon which the trial court could reasonably conclude that the state proved all the elements of the alleged offense beyond a reasonable doubt. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph one of the syllabus. The trial court assumes the role of the trier of the fact, and, as such, is in the best position to evaluate witness credibility and resolve questions of fact. *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. A reviewing court will not disturb the trial court's finding on the

issue of credibility. *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583.

1

{¶ 46} Fortney argues that the trial court's judgment that he acted knowingly is not supported by the manifest weight of the evidence. His arguments for this assignment of error are identical to those presented in his first assignment of error.

{¶ 47} Again, R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." To determine a juvenile's intent, it is necessary to rely on circumstantial evidence. *Lott*, 51 Ohio St.3d at 168, 555 N.E.2d 293.

{¶ 48} The state presented evidence that Fortney had initiated the altercation, armed with a large stick as a weapon. According to the testimony of Ben, Krenisky, and the victim, Fortney swung the stick at the victim several times before the victim obtained a weapon and gave chase. Krenisky and the victim testified that once the chase had ceased, Fortney again swung at the victim and struck the victim's arm, which was used to block the blow. This testimony, along with the size of the stick, provides substantial evidence upon which the trial court could rely in finding that Fortney intended to strike the victim.

2

{¶ 49} Next, Fortney argues that the manifest weight of the evidence proves that he did not *cause* physical harm to the victim. Again, Fortney asserts the same arguments as in his first assignment of error.

{¶ 50} The strongest evidence in Fortney's favor is Brandon Haught's testimony that he had seen the victim initiate the altercation and trip and fall while chasing Fortney. However, this testimony is tempered by the fact that Haught admitted that (1) he was working while observing the altercation, (2) it was twilight at the time the events transpired, (3) many people were near him at the time of his observations, and (4) he did not witness the events taking place after the chase ceased. While we do not necessarily believe that Haught lied in his testimony, we believe that enough factors exist for the trial court to question the credibility of his testimony.

{¶ 51} Fortney also argues that the state proffered conflicting testimony to support its case. We disagree. Krenisky testified that he had seen Fortney strike the victim with the stick. While Ben did not observe the same, we note that his testimony reveals that he witnessed the altercation from inside his home, and the altercation took place directly outside, and around, Krenisky's home.

Alice did not testify whether she observed Fortney strike the victim; indeed, neither the prosecution nor the defense asked if she had witnessed the hit. Instead of creating inconsistencies, the testimonies simply show the observations of three different people from three different vantage points. It is not surprising that they witnessed different aspects of the altercation, given that they each had a different proximity from which to view it.

{¶ 52} Fortney also argues that Alice's decision to restrain the victim, and Krenisky's testimony that he observed the victim strike Fortney in the lower back with a baseball bat, prove that he was not the aggressor. However, Alice provided two plausible reasons for choosing to restrain the victim instead of Fortney: (1) the victim was physically closer to her and, thus, easier to restrain and (2) she knew the victim and felt more comfortable restraining him. The trial court was free to believe this testimony, and we can find no reason to disturb that belief. Her reasons are logical and understandable. Also, the fact that the victim was yelling for the fight to continue when Alice restrained him does not prove that Fortney was not the aggressor. The credible evidence shows that Fortney approached the victim, armed with a stick, and with the intent to fight. The victim then armed himself, began to chase Fortney, and then suffered a broken arm due to Fortney's actions. While we do not condone the victim's willingness to fight, it is not surprising that he became incensed. The same is true for the victim's decision to strike Fortney in the lower back with a baseball bat. The victim struck Fortney after Fortney struck the victim. This act, even if not executed in self-defense, does not alter the fact that Fortney acted as the initial aggressor and caused physical harm to the victim.

{¶ 53} Finally, Fortney argues that the manifest weight of the evidence proves that the victim complained that his right arm ached after the altercation, but medical records show that he suffered a fractured left arm. Fortney insinuates that he did not cause the victim's broken arm. We disagree. The victim and Krenisky testified that Fortney had struck the victim's arm. The medical records reveal that the victim suffered a hairline fracture to his left arm. The only evidence disputing this testimony came from Alice, who testified that she had noticed swelling in the victim's right arm after the altercation ended. However, as we noted in the first assignment of error, it is a reasonable inference to assume that she was referring to the victim's arm according to her own left-right orientation rather than the victim's. Substantial evidence supports the finding that the victim suffered a broken arm due to Fortney striking his arm with a large stick.

3

{¶ 54} Finally, Fortney argues that the trial court's judgment is against the manifest weight of the evidence because the state failed to prove that

the stick met the definition of a deadly weapon. As mentioned in the first assignment of error, the state must meet a two-prong test to prove the stick is a deadly weapon. First, it must prove that the stick is an "instrument, device, or thing capable of inflicting death." R.C. 2923.11(A). Second, the state must prove that the stick was "designed or specially adapted for use as a weapon, or possessed, carried or used as a weapon." Whether a weapon constitutes a deadly weapon depends on the facts and circumstances of each particular case. See *Byrd*, supra, citing *Cooper*, supra. A piece of wood, if capable of inflicting death and carried or designed as a weapon, may meet the definition of a deadly weapon. *Murray*, supra, at ¶ 27, citing *Pope*, supra, *Berry*, supra, at ¶ 13–14, citing *Scott*, supra; *Ridley*, supra, citing *Shannon*, supra.

{¶ 55} Here, the trial court found that the weapon in question was (1) an instrument, device, or thing capable of inflicting death, and (2) possessed, carried, or used as a weapon. For the former finding, the trial court reasoned that the stick in question, which was approximately four feet in length and six inches in circumference, could cause death if it were used to bludgeon a victim's head. The trial court found that the stick was possessed, carried, or used as a weapon because Fortney, acting as the initial aggressor, armed himself with the stick and swung it at the victim.

{¶ 56} Again, Fortney provides no clear argument why this finding is against the manifest weight of the evidence. The state entered the stick into evidence and three of the witnesses identified the stick as the one Fortney carried. This court has seen the stick in question and agrees that the trial court could find that it was of such a size and thickness, that it was an instrument, device, or thing capable of inflicting death by bludgeoning. Thus, substantial evidence exists to prove that Fortney knowingly caused physical harm to the victim and acted as the aggressor in the altercation. Consequently, we find that the substantial evidence supports the trial court's finding that the stick used as a weapon constituted a deadly weapon pursuant to R.C. 2923.11(A).

4

{¶ 57} In conclusion, we find that the manifest weight of the evidence supports the trial court's decision to adjudicate Fortney as a delinquent for an act, which if committed by an adult, constitutes felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2). Our review of the record and the weight and credibility of the evidence and witnesses reveals that substantial evidence supports the judgment. Accordingly, we overrule Fortney's second assignment of error.

III

{¶ 58} In his third assignment of error, Fortney argues that the trial court abused its discretion when it denied his motion for a continuance. Fortney asserts that a continuance was necessary because the state delivered discovery on December 6, 2004 and then continued to send supplemental discovery until the week prior to the adjudicatory hearing. He reasons that, without a continuance, his trial counsel was unable to properly prepare his defense, thus depriving him of a fair hearing.

{¶ 59} Juv.R. 23 states: "Continuances shall be granted only when imperative to secure fair treatment for the parties." The grant or denial of a continuance is a matter entrusted to the sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078, syllabus. Appellate courts may not disturb a trial court's decision to deny a continuance absent an abuse of discretion. Id. at 67, 21 O.O.3d 41, 423 N.E.2d 1078. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. This standard of review is also applicable to Juv.R. 23 and proceedings within the juvenile system. *In re Basco* (May 7, 1997), Scioto App. No. 96CA2418, 1997 WL 243509. Whether a trial court abused its discretion in denying a continuance depends upon the facts and circumstances of each case, "particularly in reasons presented to the trial judge at the time the request is denied." *Unger*, supra, 67 Ohio St.2d at 67, 21 O.O.3d 41, 423 N.E.2d 1078.

{¶ 60} In *Unger*, the court set forth a balancing test for determining whether a trial court abused its discretion by denying a motion for a continuance. A trial court must weigh "any potential prejudice to a defendant" against "concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." Id. at 67, 21 O.O.3d 41, 423 N.E.2d 1078. Specifically, "[i]n evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id. at 67–68, 21 O.O.3d 41, 423 N.E.2d 1078, citing *U.S. v. Burton* (C.A.D.C.1978), 584 F.2d 485; *Giacalone v. Lucas* (C.A.6, 1971), 445 F.2d 1238.

{¶ 61} Fortney filed a motion for a continuance on December 15, 2004, which the trial court denied. Fortney then renewed his motion at the beginning of the

adjudicatory hearing. The stated reason for requesting a continuance was that discovery was first delivered on December 6, 2004, with additional discovery being received only the week before the hearing. Fortney's counsel reasoned that additional time was needed for further preparation, investigation, and discovery. The trial court denied the motions on the basis of its busy docket, Fortney's detention, and defense counsel's failure to file a motion to compel discovery or contact the court about the state's alleged slow delivery of discovery. We cannot find that the trial court abused its discretion by denying the continuance.

{¶ 62} The Sixth District has noted that a trial court "has the power to keep the docket from becoming stagnant. This power comes from Juv.R. 23, which provides, '[c]ontinuances shall be granted *only when* imperative to secure fair treatment for the parties.'" (Emphasis added.) *In re Daniel K.*, Ottawa App. Nos. OT–02–025, OT–02–023, 2003-Ohio-1409, 2003 WL 1465043, ¶ 23. The trial court also enjoys the authority to weigh considerations of its docket and the public's interest in an efficient dispatch of justice against any potential prejudice to the juvenile. *Unger*, 67 Ohio St.2d at 67, 21 O.O.3d 41, 423 N.E.2d 1078. Here, Fortney failed to file a motion to compel discovery, contact the court regarding delayed discovery, and inform the court of the anticipated length of delay requested. For these reasons, the trial court acted within its discretion when it denied the motion. Accordingly, Fortney's third assignment of error is without merit.

## IV

{¶ 63} In his fourth and final assignment of error, Fortney contends that he received ineffective assistance of counsel because the trial court denied his continuance, thus preventing his attorney from properly preparing his defense. Specifically, Fortney asserts that his counsel failed to "conduct a complete and thorough examination of discovery materials, better investigate and cross-examine witnesses, and prepare the defense." He contends that defense counsel's lack of preparation prejudiced his defense. We disagree.

{¶ 64} Reversal of a conviction or sentence based upon ineffective assistance requires (a) deficient performance, "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *State v. Ballew* (1996), 76 Ohio St.3d 244, 255, 667 N.E.2d 369, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 65} As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." *United States v. Hasting* (1983), 461 U.S. 499, 508–509, 103 S.Ct. 1974, 76 L.Ed.2d 96.

{¶ 66} Fortney does not argue that his counsel acted deficiently by failing to file a motion to compel discovery or contact the court prior to his motion for a continuance regarding any delay in receiving discovery. Instead, he contends that the trial court's denial of his motion for a continuance rendered his counsel's performance deficient. We previously ruled that the trial court acted within its sound discretion in denying the motion. Therefore, that proper denial cannot now be used to attack the performance of defense counsel at trial. Because the denial was proper, any perceived "deficiencies" due to that denial cannot constitute errors so serious as to deprive the juvenile of the counsel guaranteed by the Sixth Amendment. Moreover, the record reveals that defense counsel thoroughly cross-examined every state witness, properly asserted a defense, and brought to the court's attention any possible inconsistencies in the evidence. Here, the trial court properly found Fortney delinquent after he received a fair trial with the effective assistance of counsel. Accordingly, Fortney's fourth assignment of error is without merit.

V

{¶ 67} In conclusion, we overrule Fortney's four assignments of error. Because a reasonable trier of fact could find, beyond a reasonable doubt, that every element of the charged offense was met, we find that sufficient evidence supports the trial court's adjudication. We also find that the trial court's adjudication did not create a manifest miscarriage of justice and, thus, is supported by the manifest weight of the evidence. The trial court acted within its sound discretion when it denied Fortney's motion for a continuance when Fortney failed to file a motion to compel discovery, raise the issue of delayed discovery to the trial court in any other manner, and failed to indicate the length of the delay requested. Finally, because trial counsel did not act deficiently, Fortney received his constitutional right to the effective assistance of counsel. Accordingly, we affirm the trial court's judgment.

Judgment affirmed.

ABELE, P.J., and MCFARLAND, J., concur.