[Cite as *In re J.C.*, 2019-Ohio-4027.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| IN RE: J.C. | : | APPEAL NO. C-180493<br>TRIAL NO. 18-179Z |
| | : | |
| | : | *O P I N I O N.* |


Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 2, 2019


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, *Julie Kahrs Nessler*, Assistant Public Defender, and *Heather Heineman*, Legal Intern, for Appellant J.C.

**WINKLER, Judge.**

{¶1}    J.C. appeals from the judgment of the Hamilton County Juvenile Court adjudicating him a delinquent child for committing an act that would have constituted complicity to commit robbery had he been an adult.  He argues that the evidence shows only that he was an innocent bystander and not a complicitor.  For the reasons that follow, we affirm.

{¶2}    At trial, the state presented the testimony of the victim, Jamel Brown, and the investigating officer, Hamilton County Sheriff's Deputy Ryan Braun.  Brown testified he was walking down the street around noon on January 13, 2018, when he saw a group of male juveniles with their faces concealed on the other side of the street engaging in a verbal altercation with an individual in a car.  One of those juveniles yelled "what are you looking at" to Brown and pointed what appeared to be a real gun at Brown while repeatedly shouting that he was going "to kill" him.  The gunman, who was wearing a camouflaged face mask, crossed the street to approach Brown, and two other juveniles followed.  Eventually the three reached Brown.

{¶3}    Next, Brown explained

[t]hey're standing right there, and we're all having a verbal altercation because they got a gun in my face.  And so we're yelling back and forth to each other.  * * * Now, one guy—the guy who had the gun on me was tall, skinny, light skinned.  The guy on the left was dark skinned and short.  The guy on the right, * * * he didn't really say anything. * * * The guy on the left * * * said we should go in his pockets and see what he got.  By looking at this guy's [J.C's] build, it wasn't him who said we should go in his pockets.

{¶4} Before Brown's assailants took anything, Deputy Braun appeared on the scene, responding to an earlier call about an aggravated robbery attempt in the area involving a group of juveniles. Deputy Braun testified that upon his arrival, he immediately noticed two groups of individuals who were about 40 to 50 yards apart. One group of individuals was casually walking. The other group included only three individuals, Brown and two suspects who the deputy later identified as J.C. and A.B. J.C. was wearing a black scarf that covered his face and A.B. was wearing a camouflaged face mask. Brown ran towards the deputy shouting "they're trying to rob me, they're trying to shoot me, he's got a gun." J.C. and A.B. ran away together from the deputy, but were chased by the deputy and other officers.

{¶5} The police apprehended J.C. and A.B. within six or seven minutes and also recovered a BB gun. J.C. admitted that he was at the scene of the robbery, but told the deputy that he "didn't do nothing."

{¶6} The defense thoroughly cross-examined the state's witnesses, pointing out purported inconsistencies in their recollections, including Brown's recollection that he had been accosted by three suspects and the deputy's recollection that he had seen only two suspects. The defense also emphasized that Brown did not believe J.C. was the assailant who had held the gun to him or had threatened to take his property.

{¶7} Following the trial, the magistrate issued a decision stating:

J.C. was charged with complicity to robbery, a felony of the second degree. Although the victim testified that three men approached him, one was holding a gun, P.O. Braun testified that when he pulled up to the area, there were only 2 suspects, plus the victim. He did not see the robbery happen. He testified that as the victim was running

3

towards him, that two of the suspects ran.  One of those suspects was J.C., and the other suspect was the person with the gun.  The victim testified that a second person standing with the gunman said something about going through his pockets or wondering what was in his pockets.

Based on the totality of the circumstances, the Court finds the state has proven its case beyond a reasonable doubt.  Although the victim could not identify J.C., P.O. Braun identified J.C. as standing with the co-defendant as he arrived on the scene.  They both fled together and both J.C. and the co-defendant were apprehended.  J.C. was wearing the same scarf and backpack that P.O. Braun saw him wearing as he ran away.

{¶8}   J.C. filed objections, arguing in part that the magistrate erred by making the factual finding that J.C. was one of the participants in the robbery where this conclusion was not supported by the evidence.  The trial court overruled the objection, adopted the magistrate's decision, and adjudicated J.C. delinquent for complicity to commit robbery.

{¶9}   In his two assignments of error, J.C. argues that his adjudication was not supported by sufficient evidence and was against the manifest weight of the evidence.  Specifically, he contends that (1) the part of the deputy's testimony implicating him as the assailant who verbally threatened to take Brown's property was not credible, because the deputy did not see the robbery and that testimony contradicted the victim's testimony that J.C. was not that individual, and (2) the victim's testimony showed only that J.C. was at the scene of the robbery and later

fled when the police arrived, which as a matter of law was insufficient establish criminal liability as a complicitor. We address these arguments together.

{¶10} In reviewing whether a juvenile court's adjudication of delinquency was not supported by sufficient evidence or was against the manifest weight of the evidence, this court applies the same standard of review applied to criminal defendants. *See In re Q.W.*, 2017-Ohio-8311, 99 N.E.3d 944, ¶ 7 (8th Dist.); *In re Fortney*, 162 Ohio App.3d 170, 2005-Ohio-3618, 832 N.E.2d 1257, ¶ 22-23 (4th Dist.); *In re A.S.*, 1st Dist. Hamilton No. C-180056, 2019-Ohio-2359, ¶ 10.

{¶11} The relevant inquiry for determining legal sufficiency is whether a rational trier of fact, when viewing the evidence in the light most favorable to the state, could have found the essential elements of the offense supporting the finding of delinquency proven beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶12} In determining whether an adjudication was against the manifest weight of the evidence, this court must review the entire record, weigh all the evidence and reasonable inferences, and determine whether, in resolving conflicts in the evidence, the juvenile court clearly lost its way and created a manifest miscarriage of justice such that the adjudication must be reversed and a new trial ordered. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶13} The juvenile court adjudicated J.C. delinquent for complicity to commit robbery. The complicity statute provides in part that no person acting with the kind of culpability required for the commission of an offense shall "aid and abet another in committing the offense." R.C. 2923.03(A)(2). The relevant definition of

robbery provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." R.C. 2911.02(A)(2).

{¶14} To protect innocent bystanders, the Ohio Supreme Court has held that " 'the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.' " *State v. Johnson*, 93 Ohio St.3d 240, 243, 754 N.E.2d 796 (2001), quoting *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). Instead, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *Johnson* at syllabus, cited in *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, ¶ 13.

{¶15} A defendant's participation in criminal intent may be inferred from the circumstances surrounding the crime. *Id.*; *In re B.M.*, 9th Dist. Lorain No. 04CA008508, 2005-Ohio-717, ¶ 10. This includes the defendant's " 'presence, companionship, and conduct before and after the offense is committed.' " *Johnson* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971); *State v. Watson*, 1st Dist. Hamilton No. C-010691, 2002-Ohio-4046, ¶ 32. Flight from the police may be indicative of an accused complicitor's consciousness of guilt. *See State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002 WL 727009, *5 (Apr. 26, 2002), citing *State v. Taylor*, 78 Ohio St.3d 15, 27, 676 N.E.2d 82 (1997).

{¶16} In *Johnson*, the Supreme Court held that the actions of the defendant, who, along with fellow members of the Crips gang, hatched a calculated plan to kill a rival gang member to avenge the shooting of a Crips member, and who rode in the lead car with the shooter looking for their intended-but-never-located target,

constituted complicity by aiding and abetting, when a child was killed and three others were injured. *Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796. In doing so, the court rejected the defendant's argument that the evidence did not support a complicity conviction where there was no evidence that he had "articulate[d] his intent" to join the murderous plan. *Id.* at 245.

{¶17} In this case, we must look to the circumstances surrounding Brown's robbery and J.C.'s presence, companionship, and conduct before and after the robbery to determine if J.C. supported, assisted, encouraged, cooperated with, or advised in the robbery of Brown, and shared the criminal intent of the known principal, A.B. Upon our review, we determine that the adjudication was supported by sufficient evidence and not was not against the manifest weight of the evidence, even accepting J.C.'s argument that the evidence did not support a finding that he was the assailant who had verbalized the threat to take Brown's property.

{¶18} The evidence demonstrated that J.C., part of a large group of male juveniles who had concealed their identities, decided to leave the group along with another juvenile to follow A.B. across the street to confront the victim, a stranger, while A.B. was repeatedly threatening to kill the victim with what appeared to be a real gun. The three veiled assailants stood together as A.B. held the gun in Brown's face and the other assailant verbally threatened to go through the victim's pockets. When the police appeared, J.C. fled the crime scene with A.B.

{¶19} This evidence, when viewed in the light most favorable to the state, shows that J.C. was not "an innocent bystander" at the scene but rather contributed to the unlawful act and shared the criminal intent of his partners, including A.B. Although evidence showing a defendant's mere presence at the scene of a robbery is not enough to establish complicitor liability, in this case the presence was a weighty

factor because the number of aligned assailants increased the intimidation of the victim and the likelihood of a successful robbery.

{¶20} Finally, upon our review of the record, we determine that inconsistencies within the state's case do not require a reversal on either sufficiency- or manifest-weight-of-the-evidence grounds. The trier of fact may believe all, part or none of witness's testimony. *In re A.S.,* 1st Dist. Hamilton No. C-180056, 2019-Ohio-2359, at ¶ 12. And when evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment. *Id.* Ultimately, "[t]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶21} We conclude that the adjudication of delinquency was supported by evidence demonstrating beyond a reasonable doubt that J.C. had aided and abetted in Brown's robbery. Further, this is not a case where the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed. Consequently, we overrule the assignments of error and affirm the juvenile court's judgment.

Judgment affirmed.

**MYERS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.