DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Huron County Court of Common Pleas, Juvenile Division, adjudicating appellant to be delinquent. Because we conclude that the trial court's findings and conclusions of law are supported by the record, we affirm.
 {¶ 2} Appellant, Shane L.F., then 17 years old, was alleged to be delinquent as a result of conduct on two counts which allegedly would have constituted crimes if committed by an adult: underage drinking of alcohol, in violation of R.C. 4301.69(E)(1); and felonious assault, in violation of R.C. 2903.11(A).[1]
The complaint stemmed from incidents, including a "pushing match," which allegedly occurred at a party at a home in Lorain County. The following facts were presented at a two-day hearing which was held by the Lorain County Court of Common Pleas, Juvenile Division.[2]
 {¶ 3} Around midnight on Saturday during the 2004 Labor Day weekend, Shane and his friend, Larry, attended a party at the home of Melissa, Shane's girlfriend. There were several other male teens, friends of Melissa's brother, in attendance as well. The party took pace at a bonfire in a gully in the back yard, which was some distance away from the deck off the back of the residence. Over the next couple of hours, the party goers consumed various alcoholic beverages, including beer, whiskey, and wine coolers. At some point, Shane went to sleep in his truck, which had been returned to a spot by the garage, after being parked back by the fire. Larry remained at the bonfire with two other boys.
 {¶ 4} Despite Melissa's mother's instructions that no one was to be in the house, some of the boys went inside during the early morning hours when it became chilly outside. Melissa's brother and one friend went to sleep in the brother's bedroom. Others remained in the living room area or were outside on the deck. Two or three of the boys became aware that Larry was in Melissa's room. Deciding that this was improper, Erik M. and one other boy decided to wake Shane to tell him of this situation.
 {¶ 5} Melissa testified that she had gone to her own bedroom next to her brother's and then went to take a shower. When she returned to her room, Larry was there. She stated that she saw Erik outside her window who yelled at Larry. Melissa said that shortly after this, Shane came to her bedroom. When he arrived at her door, she was sitting on her bed and Larry, whose shirt was off, was standing by the corner of her bed. After a few minutes of silence, Larry left the bedroom. Melissa testified that she then told Shane that Larry had put his hands under her shirt and inside her shorts.
 {¶ 6} In the meantime, Larry had gone outside to find Erik, and confront him about what he told Shane. Larry and Erik resolved their issues and shook hands. Shane then came out onto the deck to confront Larry. Two versions of the subsequent altercation were presented.
 {¶ 7} Shane and Melissa stated that both boys had engaged equally in the shoving match. Shane said that he pushed Larry when he first came out on the deck. Shane then returned briefly to Melissa's bedroom, found Larry's shirt, went back to the deck and shoved the shirt at Larry. Shane stated that he and Larry pushed each other back and forth several times. Shane then held Larry down on a small glass patio table, with his forearms across Larry's chest and neck areas. Shane stated that he released Larry to get up, but then began pushing him up against the rail. According to Shane, Larry grabbed onto the rail with his arms, and deliberately kicked his feet up at Shane. Shane said he reacted defensively and pushed Larry's feet away, causing Larry to go sideways over the railing and fall to the ground, a distance of approximately four to six feet. Shane said he did not go down to the ground to help Larry up, but told Larry to leave after he stood up.
 {¶ 8} Larry, Erik, and another boy, Ben W. testified that Shane was the primary aggressor in the pushing match. They said that when Shane began shoving Larry, Larry did not push back. Larry claimed that he had consumed only one or two beers, no whiskey, and denied any wrongdoing in Melissa's room. He said that he and Melissa had been talking and that she invited him to her room. He also said he was "shocked" by Shane's attack and had not pushed or tried to kick Shane. Larry said that just before he flipped over the railing, Shane grabbed his feet and pushed them as an offensive move. Larry fell onto a small plastic garden ornament, landing on either his back or his buttocks. Erik helped Larry up, who was able to walk, but appeared somewhat hurt. Larry, who admitted his recollections might be hazy, thought that Shane had also come down to help him up.
 {¶ 9} After Shane's instruction to leave, Larry walked to a neighbor's house, since it was very early Sunday morning, September 5, 2004. Larry said he knew the neighbor, Kenneth Foor, as the parent of a friend and someone he knew "from church." When no one answered his knock at the house door, Larry went into the Foors' open garage, climbed into a pickup truck parked there, and went to sleep. When he awoke later that morning, Larry stated that Foor found him in the truck and drove him home around 7:30 a.m. Larry stated that he had pain in his back, but did not think it was serious.
 {¶ 10} Kenneth Foor testified that he found Larry asleep in his truck around 9:00 a.m. Since he did not know the boy, he asked what he was doing in the truck. Larry explained the events of the previous evening and said he had consumed about eight beers the night before. Foor drove Larry home, discussing the obvious pitfalls of drinking alcohol. Foor stated that after getting out of the truck, Larry "sprinted" up to the door of his home and did not appear to be hurt.
 {¶ 11} Larry sought medical treatment at a local hospital on Monday, September 6, 2004. An x-ray and CAT scan revealed that Larry had compression fractures in two vertebrae in his lower back. He then saw Dr. Michael Powers, an orthopedic surgeon, on September 8, 2004, for follow-up and additional treatment. Larry stated that he continued to have back pain and take medication.
 {¶ 12} Dr. Powers testified, confirming Larry's injuries. He could not pinpoint an exact date for the injury to have occurred, but stated that when he saw Larry on September 8, 2004, the injuries were "fresh." He also stated that although common in elderly patients who simply fall, compression fractures in younger patients were usually the result of falls from a higher impact or velocity, such as from a higher elevation or a car accident. He said that, although he could not say for certain what the cause was, Larry's injury was consistent with a fall from a porch. Dr. Powers stated that he prescribed the following treatments for Larry: anti-spasmodic, anti-inflammatory, and pain medications; physical therapy; and a back brace to help with comfort issues. The doctor said that although the fractures were relatively small, Larry continued to complain of pain during subsequent visits.
 {¶ 13} The Lorain County Juvenile Court adjudicated appellant to be delinquent based upon Counts 1 and 3, the offenses of felonious assault and prohibitions. Count 2, menacing, was dismissed pursuant to Juv.R. 29. The case was then transferred to Huron County Court of Common Pleas, Juvenile Division, for disposition. The Huron County Juvenile Court placed appellant in the legal custody of the Department of Youth Services for a minimum of one year and a maximum of the child's twenty-first birthday. This commitment was suspended upon certain conditions of community control. Appellant or his mother was also assessed fines of $1,000 for Count 1, $950 suspended on conditions of compliance with probation, and $250 for Count 3, $225 suspended on conditions of compliance with probation.[3]
 {¶ 14} Appellant now appeals from that judgment, arguing the following five assignments of error:
 {¶ 15} "I. The trial court erred as a matter of law in finding Shane F. to be a delinquent child as to Count Three where the child did not commit an act which would be an offense if committed by an adult.
 {¶ 16} "II. The trial court erred to the prejudice of Shane F. when it determined that the evidence did not support a finding of delinquency by the lesser offense of aggravated assault.
 {¶ 17} "III. The trial court erred to the prejudice of Shane F. when Shane F. was not permitted to testify as to the reputation of Larry T. for truthfulness in the community.
 {¶ 18} "IV. The trial court erred in finding that Larry T. suffered serious physical harm as a result of being pushed by Shane F.
 {¶ 19} "V. Assuming arguendo that the state proved serious physical harm, the trial court erred in finding that Shane F. had acted knowingly rather than recklessly."
 I. {¶ 20} In his first assignment of error, appellant argues that the trial court erred in finding him delinquent for prohibitions, i.e., underage alcohol consumption, in violation of R.C. 4301.69(E).
 {¶ 21} A delinquent child is one who "violates any law of this state * * * that would be an offense if committed by an adult." R.C. 2152.02(F)(1). R.C. 4301.69(E) provides, in relevant part, that: "No underage person shall knowingly possess or consume any beer or intoxicating liquor, in any public or private place * * *." "Underage person" is defined as "a person under the age of twenty-one years." R.C. 4301.69(H)(5). Consequently, this section applies not only to a "child," a person under 18 years old, but also to adults who are 18, 19, or 20. Thus, since an adult may violate R.C. 4301.69(E), a violation of R.C. 4301.69(E) by a child may constitute conduct which "would be an offense if committed by an adult." State v. Lockhart (Feb. 4, 1993), 2d Dist. No. 13463.
 {¶ 22} In this case, appellant, a child, allegedly violated a law, i.e., underage alcohol consumption, which would be an offense if committed by some adults. Therefore, his conduct was sufficient to support the trial court's finding of delinquency.
 {¶ 23} Accordingly, appellant's first assignment of error is not well-taken.
 II. {¶ 24} In his second assignment of error, appellant essentially argues that the trial court's finding of delinquency as to the felonious assault offense was both insufficiently supported by and against the manifest weight of the evidence. Appellant contends that the evidence established the existence of "serious provocation" by the victim, requiring the court to find the lesser degree offense of aggravated assault.
 {¶ 25} On review of a delinquency adjudication for sufficient evidence, an appellate court will not disturb a trial court's resolution of the weight and credibility of the evidence. In reFortney, 162 Ohio App.3d 170, 2005-Ohio-3618, at ¶ 30, citing toState v. Martin (1983), 20 Ohio App.3d 172, 175. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386, superceded by constitutional amendment on other grounds by Statev. Smith (1997), 80 Ohio St.3d 89. When reviewing the sufficiency of the evidence, our review is limited to determining if evidence was presented, which if believed, could satisfy the average person of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph 2 of the syllabus. "In conducting this evaluation, we must view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 26} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether the verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Thompkins, supra, at 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence").
 {¶ 27} A person who knowingly causes serious physical harm to another commits the offense of felonious assault. R.C. 2903.11. A defendant acts "knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). R.C. 2901.01(5), in pertinent part, defines serious physical harm to a person as:
 {¶ 28} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 29} "* * *
 {¶ 30} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 31} A person is "presumed to intend the natural, reasonable and probable consequences of his voluntary acts." State v. Johnson (1978), 5 Ohio St.2d 35, 39. When the issue in dispute is a defendant's purpose or intent, it is necessary to rely upon circumstantial evidence because intent cannot be proved by a third person's direct testimony, but must be gathered from the surrounding facts and circumstances. State v. Lott (1990),51 Ohio St.3d 160, 168.
 {¶ 32} In the present case, evidence was presented that established that the victim, Larry, did, in fact, suffer two fractured vertebrae, received significant medical treatment and prescriptions, temporarily wore a back brace, and still suffered from continuing pain connected with the injury. In addition, Shane acknowledged that he was aware that fighting on a four to six feet elevated deck could probably result in someone being hurt, and would likely cause serious injury if a person fell off the deck. Therefore, we conclude that sufficient evidence was presented as to all the elements of felonious assault. We now turn to whether the court's failure to find the lesser offense of aggravated assault was against the manifest weight of the evidence.
 {¶ 33} The elements of felonious assault, R.C. 2903.11, and aggravated assault, R.C. 2903.12, are the same, except for the mitigating factor of serious provocation found in aggravated assault. State v. Mack (1998), 82 Ohio St.3d 198, 200; Statev. Deem (1988), 40 Ohio St.3d 205, 210-211. "Serious provocation" requires that a defendant demonstrate that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into causing serious physical harm. R.C. 2903.12. Defendant has the burden of proving the mitigating factor by a preponderance of the evidence. R.C. 2901.05; State v. Rhodes
(1992), 63 Ohio St.3d 613, 617.
 {¶ 34} Several factors are considered in determining whether the circumstances of a given situation constituted reasonably sufficient provocation to incite the defendant into using deadly force. State v. Shane (1992), 63 Ohio St.3d 630, First, an objective standard is applied to determine whether the alleged provocation is sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Id. If that objective standard is met, the inquiry then shifts to a subjective standard to determine whether the defendant in the particular case actually was under the influence of sudden passion or in a sudden fit of rage. Id. at 34. As a general rule, provocative words and threats, by themselves, cannot justify an assault. Shane, supra, at 637; State v. Napier (1995),105 Ohio App.3d 713, 723; State v. Harris (June 22, 2000), 10th Dist. No. 99AP-1087; State v. Woodruff (Dec. 31, 1997), 11th Dist. No. 96-L-111. See also, State v. Mack (1998),82 Ohio St.3d 198, 201 (past incidents or verbal threats will not satisfy the test for reasonably sufficient provocation when there has been sufficient time for cooling off).
 {¶ 35} The record reveals two versions of the fight, and the trial court was required to choose between them. Generally, although we may have limited review of the weight of evidence, the trier of fact, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., Inc. v. City of Cleveland (1984),10 Ohio St.3d 77, 80. Reversal based upon the manifest weight of the evidence should occur "only in the exceptional case in which the evidence ways heavily against conviction." Thompkins,
supra, at 387, citing State v. Martin, supra, at 175.
 {¶ 36} In this case, Shane confronted Larry after hearing information revealed to him by Melissa. Appellant contends that this information was sufficient to establish that he was seriously provoked due to Larry's actions. Nevertheless, Shane was sufficiently under control of his actions to stop the fight, go back into the home, retrieve Larry's shirt, and throw it at him. At that point, Shane had several choices: verbal confrontation, report the problem to the adults in the home, or continue with the pushing match. In our view, there was credible evidence that Larry offered little physical defense to the pushing. Even presuming that Larry pushed back a few times, Shane could have chosen to simply tell him to leave, rather than escalating the fight until its culmination of Larry's fall. Although we recognize that the alleged unwanted sexual actions by Larry to Melissa may have been upsetting to Shane, under the surrounding circumstances, we cannot say that, under an objective standard, that Larry's actions would have justified the continued use of physical force against Larry. Therefore, we cannot say that the trial court's specific finding of no serious provocation was against the manifest weight of the evidence.
 {¶ 37} Accordingly, appellant's second assignment of error is not well-taken.
 III. {¶ 38} In his third assignment of error, appellant argues that the trial court improperly excluded his testimony regarding the victim's reputation for truthfulness in the community.
 {¶ 39} Generally, the admissibility of evidence is a matter within the sound discretion of the trial court. O'Brien v.Angley (1980), 63 Ohio St.2d 159, 163. An appellate court will not reverse the trial court's decision in such matters absent an abuse of discretion. Id. An abuse of discretion "connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 40} Evid.R. 608(A) provides that opinion evidence of a witness's character for truthfulness or untruthfulness may be elicited from those who are shown to be knowledgeable about such characteristics of the one who may testify. See also State v.Morgan (1992), 80 Ohio App.3d 150. Nevertheless, error may not be predicated upon the exclusion of such evidence during the examination in chief unless: (1) the exclusion of the evidence affects a substantial right of the party and (2) the substance of the evidence was made known to the court by proffer or wasapparent from the context of the questioning. State v. Gilmore
(1986), 28 Ohio St.3d 190; Evid.R. 103(A).
 {¶ 41} In this case, we agree that the trial court improperly refused to permit Shane to testify as to Larry's reputation for truthfulness. Appellant, however, failed to proffer what his testimony would have been, i.e., the conduct or circumstances which related to Larry's reputation for truthfulness. In addition, other than Shane's bare conclusory statement, neither the record nor the context of the questioning indicates the basis for Shane's opinion concerning the victim's reputation for truthfulness. Consequently, this court is unable to determine from the context of the record whether appellant was prejudiced by the exclusion of the evidence. Therefore, due to the lack of a proffer or any contextual support, the exclusion of evidence cannot be assigned as error on appeal. Evid.R. 103(A), Gilmore,
supra; State v. Grubb (1986), 28 Ohio St.3d 199, 202.
 {¶ 42} Accordingly, appellant's third assignment of error is not well-taken
 IV. {¶ 43} We will address appellant's fourth and fifth assignments of error together. Appellant essentially argues that the trial court erred in finding that his actions caused serious physical harm or that he acted knowingly, rather than recklessly.
 {¶ 44} We previously determined in this case, that there was sufficient credible evidence to support the trial court's finding that Larry's injuries were, in fact, caused by his fall from the deck and were of a serious nature. Therefore, appellant's fourth assignment of error is without merit.
 {¶ 45} In his fifth assignment of error, appellant is essentially arguing that the trial court's finding that appellant "knowingly" acted to cause harm to Larry was against the manifest weight of the evidence. Rather, appellant contends, the trial court should have found that his actions were "reckless" rather than "knowing."
 {¶ 46} As we noted previously, a defendant acts "knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Simple assault, a first degree misdemeanor, is defined in R.C. 2903.13
as:
 {¶ 47} "(A) No person shall knowingly cause or attempt to cause physical harm to another.
 {¶ 48} "(B) No person shall recklessly cause serious physical harm to another."
 {¶ 49} The mens rea for simple assault is either "knowledge," as defined above, or "recklessness" defined in R.C. 2901.22(C) as:
 {¶ 50} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 51} Simple assault is a lesser included offense of felonious assault. State v. Hartman (1998),130 Ohio App.3d 645, 647. We previously determined that the evidence presented was sufficient to establish the element of "knowingly." We will now determine whether the court's finding was against the manifest weight of the evidence. See State v. Thompkins, supra.
 {¶ 52} In this case, both participants were under the influence of alcoholic beverages, which contributed to the escalation of events. The defining moment for purposes of determining intent, however, was the final push which sent Larry over the railing. Testimony was in conflict regarding whether this push was an intentional or a reflex action. Although appellant may not have intended to cause serious injuries to Larry, when Shane returned to the deck with the shirt, he chose to continue the fight, rather than back off and simply ask Larry to leave. In other words, evidence was presented that Shane intended to push Larry, and he was aware that shoving someone off an elevated deck would probably cause serious physical injuries.
 {¶ 53} After reviewing the record, evidence and testimony was presented which supports the trial court's finding that Shane's actions were intentional. Therefore, we cannot say that the trial court "lost its way" in finding that Shane acted knowingly, rather than recklessly.
 {¶ 54} Accordingly, appellant's fourth and fifth assignments of error are not well-taken.
 {¶ 55} The judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J., concur.
[1] Appellant was charged with Count 2, menacing, which was dismissed by the trial court pursuant to Juv.R.29.
[2] This case was originally filed in the Lorain County Juvenile Court because the alleged incidents occurred in Lorain County.
[3] We note that disposition also included a fine of $100 for dismissed Count 2, with $50 suspended. Although not officially assigned as error, we note this mistake so that the parties may correct this error with appropriate action in the trial court.